LAVINA PLATER, RESPONDENT, v. W. C. MULLINS CONSTRUCTION CO. AND KANSAS CITY, MISSOURI, APPELLANTS.

Kansas City Court of Appeals. April 29, 1929.

*Harry G. Kyle* and *Walter A. Raymond* for respondent.

*John T. Barker* and *Milton J. Oldham* for Kansas City.

*Fyke, Hume & Hall* for Mullins Construction Co.

BARNETT, C.—This is a suit for personal injuries against the city of Kansas City, Missouri, and W. C. Mullins Construction Company jointly, for injuries received by plaintiff while riding with her husband in a Ford automobile on Twenty-Sixth street in Kansas City, Missouri. The petition alleged that the defendant construction company negligently placed a pile of shale on the roadway of Twenty-Sixth street near its intersection with Colorado avenue and negligently permitted the same to remain at that place and negligently failed to place a light of any kind on the pile of shale to warn persons using the street at night of the obstruction and negligently failed to place a light of any kind in the vicinity of the pile of shale so it would be visible to persons using the street at night. Defendants filed separate answers which were general denials and pleas of contributory negligence.

There was evidence to the effect that the W. C. Mullins Construction Company was a corporation engaged in paving streets; that at the date of the injury complained of there was in existence a contract between the defendants providing for the paving of one block of Colorado avenue in Kansas City between Twenty-Sixth and Twenty-Seventh streets; that there was no street light at the intersection of Twenty-Sixth street and Colorado avenue, and that the nearest street light in any direction was one block away. At the time of the accident defendant construction company was preparing to pave under its contract with the city, and pursuant thereto had put some crushed rock on the south side of the paved part of Twenty-Sixth street, just west of the intersection of that street with Colorado avenue. This pile of rock extended about fifteen feet north of the south curb line of Twenty-Sixth street and was about three feet high at the highest point and sloped in all directions. The evidence showed that Twenty-Sixth street was twenty-six feet in width from curb to curb, and that there was no warning light upon the pile of rock. The evidence most favorable to plaintiff was to the effect that the rock had been dumped on that street for two whole days before the accident. Defendants' evi-

dence was to the effect that the construction company had just finished another paving job on December 24, 1923, from which some crushed rock was left over, and that at about five-thirty or six o'clock of the evening of that day they had moved the rock to the point where the accident occurred. At about thirty minutes after eight o'clock on the evening of December 24th plaintiff was riding west on Twenty-Sixth street on the right-hand side, but near the center of the street in a Ford touring car. The car was driven by her husband. The plaintiff's testimony is to the effect that the lights upon the car were good and burning and that the brakes were in good condition. The left front wheel of the automobile struck the pile of rock, the car was overturned and plaintiff was injured. The testimony most favorable to plaintiff was to the effect that the pile of rock was practically the same color as the pavement. The plaintiff's husband testified that it was a dark night, but upon cross-examination he stated that he believed that there was a full moon that night. The plaintiff testified that the night was dark, but that she did not know whether there was a full moon that night or not. There is evidence in the record as to the incline or grade of the street, but there is no evidence that the grade was such as would prevent the lights of the automobile from shining upon anything in front of the car, and we therefore omit that evidence from the statement. The plaintiff's husband testified that he could see a block ahead of the automobile by reason of his lights, but both he and the plaintiff testified that on the night of the injury they were both looking ahead and did not see the pile of rock before they ran into it. There was a sharp dispute as to the extent of the plaintiff's injuries. During the trial the defendants offered Dr. James A. Horigan as a witness. He stated that he made an examination of the plaintiff about three weeks before the time of the trial. He was then asked to state what his findings were. He answered: "I did not find anything." Thereupon, Judge KYLE, the attorney for plaintiff, interposed an objection. Since there seems to be a misconception as to the scope and basis of the objection we set out the proceedings in detail:

"By MR. KYLE: Q. Doctor, you made this examination at his request? A. Yes, sir.

"MR. KYLE: Now, if Your Honor please, I agreed the plaintiff should go to Doctor Robinson's office and be examined, but I did not agree that Doctor Horigan and a party of other doctors should examine this woman. I sent her for the express purpose of being examined by Doctor Robinson. I didn't know they were to have two doctors, and now there is another doctor that I agreed to with the city. I know Doctor Horigan personally, and know he is a competent physician and is all right, but I sent this plaintiff by

agreement, agreed with Mr. Hume, that Doctor Robinson could examine her, and I also agreed with the city counselor's office that Doctor Twyman examine her, but I did not send this woman to a clinic to be examined, and I am not finding fault with the doctor, I have known the doctor for years, but I don't like the doubling up, and I am not objecting to his competency or his honesty—

"MR. FYKE: (interrupting) What's the purpose of this speech then?

"MR. KYLE: Just so the court may understand. I simply say it's not fair to me. I said for them to name a physician and they named one, and I didn't know till Dr. Horigan came in this morning that he had ever seen this plaintiff.

"MR. WENDORFF: We will waive Twyman if you are kicking on this doctor.

"MR. KYLE: I object to the doctor testifying in this case solely on the ground that we had agreed with defendant Mullins that Doctor Robinson should examine this plaintiff.

"MR. FYKE: I want to state, Your Honor, that when I spoke to Doctor Robinson about examining this lady he said in her condition of pregnancy he wouldn't examine her by himself and for that reason he called in Doctor Horigan.

"THE COURT: Did you notify Mr. Kyle?

"MR. FYKE: No, sir, I did not notify him.

"THE COURT: You ought to have done that. If there is an objection made here, the doctor couldn't examine without consent. I will have to sustain the objection.

"MR. FYKE: The plaintiff was there.

"THE COURT: If she consented to it, that's a different proposition.

"MR. KYLE: She didn't know one doctor from another. She was sent up there to Doctor Robinson, and the name written on a slip of paper.

"MR. FYKE: Let's find out about that.

"MR. HUME: May I ask a question at this time?

"THE COURT: Yes.

"By MR. HUME: Q. Doctor, did this woman make any objection to your examination at that time? A. No, sir.

"MR. KYLE: Let me put on the plaintiff just a minute. It isn't a question of objection. Let's see what her idea was about that.

"MR. FYKE: I object to that. If the court passes on it and excludes it, that's one thing.

"THE COURT: If this lady consented to the examination, the doctor's evidence is competent.

"MR. KYLE: That's what I want to ask, if she consented?

"THE COURT: You may make that inquiry.

"To which action, order and ruling of the court the defendants, and each of them, then and there duly excepted and still except."

The plaintiff was then recalled to the stand and she testified as follows:

"Q. Mrs. Plater, do you remember having been sent to be examined? A. Yes, sir.

"Q. How many doctors were you sent to?" A. Two. Mr. Robinson was the second one.

"Q. Who examined you first? A. Doctor Twyman.

"Q. That was at the request of Kansas City, Missouri? A. The City Counselor.

"Q. The city counselor requested that, and then the next you were to be examined by? A. Doctor Robinson.

"Q. Were you sent to Doctor Robinson's office? A. Yes, sir.

"Q. Had you ever seen Doctor Robinson? A. No, sir.

"Q. Did you go to Doctor Robinson's office? A. Yes, sir.

"Q. And did you see Doctor Robinson? A. Yes, sir.

"Q. Did you ask for Doctor Robinson? A. Yes, sir.

"Q. Then did Doctor Robinson examine you? A. Well, him and this doctor together; there were two in the room.

"Q. In whose room? A. Doctor Robinson's, I judge. I asked for Doctor Robinson and he came.

"Q. Did they ask you at that time if another doctor might assist in the examination? A. No, sir.

"Q. And you went in Doctor Robinson's room and were examined? A. I judge Doctor Robinson. I was sent to Doctor Robinson. He was the one that came to the door and so when I went in there, there were two of them.

"Q. Were you told what was the other man's name? A. No, sir.

"Q. Did you know whether he was a physician or not? A. No.

"Q. Did they ask you if it was all right for a second doctor to examine you? A. No, sir.

CROSS-EXAMINATION BY MR. FYKE.

"Q. Did Doctor Horigan examine you? A. Doctor Robinson. They talked together. Doctor Robinson did most of the examination.

"Q. They were both there together? A. Yes, sir.

"Q. And they both examined you? A. Doctor Robinson did more.

"Q. I know, but both took part in the examination. A. I think Doctor Robinson was the one that examined my back and my hip.

"Q. Where was Doctor Horigan then? A. He was in the room. They both talked together.

"Q. Did you make any objections to Doctor Horigan taking part in the examination? A. I didn't know what he was there for.

"Q. Did you make any objections? A. I never knew I should. I was sent to Doctor Robinson.

"Q. You never made any objection? A. No, sir I was sent to Doctor Robinson.

"Witness excused.

"THE COURT: I will have to sustain the objection, gentlemen."

Defendants then made an offer to prove by Dr. Horigan facts and expert opinions which, if believed by the jury, would have shown the plaintiff's injury to be much less severe than was indicated by the testimony of the physicians who testified for plaintiff.

The plaintiff offered in evidence the contract between the city and the construction company. It was signed by the defendants and by N. L. Murray Fidelity & Deposit Co., as surety. The defendants objected upon the ground that the contract was not within the allegations of the petition and objected to the reading of any sections of the contract because the contract was not pleaded. The objection was overruled, and after the contract was read to the jury attorney for defendant city moved to strike out sections five and six of the contract for the reason that they were incompetent, irrelevant and immaterial and did not tend to prove or disprove any issues of the case. This motion was overruled. Defendants then moved to strike out all that part of the contract under the head of "General Stipulations" without assigning any reason therefor. This motion was also overruled. Sections five and six of the contract are as follows:

"Section 5. If in the opinion of the engineer, the first party at any time during the progress of the work, is not prosecuting the work with sufficient force to insure its completion within the time specified in this contract, he may notify the first party to employ such additional force as he deems sufficient; and on the failure of said first party to comply with such notice within three days after its delivery, the engineer may put on such additional force at the cost of the said first party; or he may, at his option, declare this contract annulled. But such declaration must be confirmed and ratified by ordinance before having any force or effect.

"Section 6. The first party will be required to observe all city ordinances in relation to obstructing the streets, maintaining signals, keeping open passageways and protecting same where exposed, and generally to obey all laws and ordinances controlling·or limiting those engaged in the work; and the said first and second parties hereby expressly bind themselves to indemnify and save harmless Kansas City from all suits or actions of every name and description, brought against the said city for or on account of any injuries or damages received or sustained by any party or parties or from the acts of said contractor, or his servants or agents, in doing the work herein contracted for, or by or in consequence of any negli-

gence in guarding the same, or in any improper material used in its construction or by or on account of any act or omission of the said first party, or his servants or agents.''

There was a verdict for plaintiff in the sum of $8000. Plaintiff filed a voluntary *remittitur* after which judgment was rendered for the plaintiff in the sum of $7500. The defendant's motions for new trial were overruled and they appealed.

Appellant contends that the evidence shows that the obstruction in the street was plainly visible to the plaintiff and that the plaintiff was therefore guilty of contributory negligence as a matter of law, and that she was also guilty of contributory negligence as a matter of law because at least eleven feet of the right-hand side of the street was unobstructed and the plaintiff's husband would not have run into the pile of rock had he driven as close to the right-hand curb as practicable. We will not pause to determine whether or not the plaintiff and her husband were engaged in a joint enterprise which would make her liable for his acts of negligence, because we do not think that the driver of the automobile was guilty of negligence as a matter of law. In the case of Roper v. Greenspon, 272 Mo. 288, a wagon loaded with long steel beams which extended about eight feet beyond the rear axle was left standing at a poorly lighted intersection of two streets. The wagon and the beams blocked the whole of the south side of the highway. No warning light was placed upon the wagon and there was evidence that the steel beams were of the same color as the asphalt pavement. The driver of an automobile was injured by running into the obstruction, and he testified that he did not see the beams. The Supreme Court held that the question of contributory negligence was for the jury. To the same effect see Roper v. Greenspon, 210 S. W. 922.

In the case of Columbia Taxicab Co. v. Stroh, 215 S. W. 748, the St. Louis Court of Appeals held that the questions of negligence and contributory negligence should be submitted to the jury in an action by a taxicab company for injury to one of its cabs received in a collision with an unlighted vehicle. In the case of Frank v. Melettio, 251 S. W. 95, it was held that the question of contributory negligence should be submitted to the jury in a case where an automobile owner sued for damages sustained by striking a pile of bricks in a street, which bricks were not marked with a lantern as required by city ordinance. In the case of Ross v. Hoffman, 269 S. W. 679, this court held that the question of contributory negligence was for the jury where the driver of an automobile failed to see an unlighted pile of lumber in a street soon enough to avoid a collision. In the case of Hannah v. Butts, 14 S. W. (2d) 31, this court held that it was for the jury to determine whether or not a driver was negligent in failing to have a light on his farm wagon

while driving along the highway after dark, although there was no statute or ordinance requiring such a light.

We notice the next allegation of contributory negligence. Section 21 of the Missouri Motor Vehicle Act of 1921, provides as follows:

"Every person operating or driving a vehicle upon the highway of this State shall observe and comply with the following rules of the road; . . . (b) All vehicles when in operation shall be kept as close to the right-hand side of the highway as practicable."

In 1920, just before this statute was enacted, our Supreme Court construed an ordinance of the city of St. Louis which provided that a vehicle, except when passing a vehicle ahead, shall keep as near the right-hand curb as possible. The court held that generally ordinances are construed by the same rules that govern the construction of statutes, and that a statute will not be given a construction that would be unreasonable or absurd. The court said:

"If the ordinance under consideration were to be given a literal construction the result would be absurd. If every vehicle should keep as close to the curb as possible the right wheel of the vehicle would run in the gutter and scrape the curb practically all the time, turning out only to pass vehicles that might be standing along the street or in passing vehicles that were going slower in the same direction. The driver must keep his vehicle winding in and out because that sinuous course would be necessary if he would keep as 'near the curb as possible.'

"If it is possible to give this ordinance a reasonable construction, such construction must be given it. Its evident purpose was to regulate and facilitate traffic upon the streets, to make it easy and expeditious instead of difficult. A literal construction and application would make traffic much more difficult, especially in a crowded thoroughfare, and defeat the very purpose which prompted its passage. We will not assume that the city authorities intended to impose unnecessary burdens upon persons traveling the streets. The ordinance must be made to harmonize with reason. Therefore, it is necessary that the naked letter of the law must gently give way to its obvious intendment. 'As close as possible' certainly was not meant literally by the ordinance-makers, otherwise it would be necessary to declare the ordinance void altogether. It must be construed to mean substantially what is meant by the statute requiring the driver of a vehicle to keep safely to the right side of the highway.

"The intention of the requirement was to cause vehicles to keep well to the right side of the street, so that other vehicles approaching from the rear would have room to pass without crossing to the left side. Plaintiff was on the right side of the street, and Keller, in utter violation of the statute, was on the wrong side of the street.

Suppose Keller had sued plaintiff for damage caused to him by the collision, could it be said that Stack was negligent and liable because he did not drive nearer the curb?

"It must be noted that the ordinance does not say a vehicle shall always keep near the curb, nor use words which imply that. In order to effectuate the purpose of the ordinance we are at liberty, under the rules of construction mentioned, to supply a word or words. 'Usually,' 'when practicable,' or words of similar import must be understood as qualifying the language, 'keep near the curb.' It was for the jury to say whether, under the circumstances, plaintiff was negligent." [Stack v. General Baking Co., 283 Mo. 396.]

We must presume that the Legislature, in enacting the statute, bore in mind the legal significance of the phraseology as recently determined by the Supreme Court. We therefore hold that the plaintiff's husband was not guilty of contributory negligence as a matter of law in failing to drive as near to the right-hand curb as possible, in view of the fact that the evidence indicated that there was no other traffic on the street at that time. *A fortiori*, plaintiff was not guilty of contributory negligence as a matter of law.

It is contended by appellant Kansas City that W. C. Mullins Construction Company was an independent contractor and that therefore the city cannot be held for the contractor's negligence. The evidence showed that the city maintained an inspector at the site of the construction work, who oversaw the work and who approved and disapproved of it as it progressed. Notwithstanding this evidence and the terms of the contract, we hold that the contractor was an independent contractor. It was held in Gerber v. Kansas City, 304 Mo. 157, that under a written contract with a city for the construction of a sewer wherein it was provided that the contractor was bound to follow the directions of the city engineer and that only such character of explosives was to be used as permitted by the city engineer, the city was not liable for an injury to a small boy who was injured by an unexploded dynamite cap which the contractor had negligently left on a pile of earth and which was found by the child. The court held that the construction company was an independent contractor; and that the use of dynamite in blasting rock out of the trench in which the sewer was to be laid was not unlawful, and in view of precaution inserted in the contract requiring the contractor to take any and all proper precautions to guard against danger or injury to persons or property, the use of dynamite in blasting with the knowledge of the city was not necessarily nor so palpably dangerous as to constitute a thing inherently dangerous in such sense as to render the city liable for

the acts of the contractor; that the injury did not result from the performance of the contract, but from the negligent act of the contractor outside of the scope of his contract. In the case of Salmon v. Kansas City, 241 Mo. 14, it was held that a contractor who was laying a sewer under a contract with a city was an independent contractor, notwithstanding the fact that the contract provided that the city reserved and had the power to direct and control the manner of performing the work, and the city engineer had authority and power to cause the discharge of incompetent, disorderly, and unfaithful servants engaged in the work. The court said that the city reserved to its engineer large powers of supervision and control as to quality of material and the method and mode of construction, but that such provisions did not prevent the full application of the doctrine of independent contractor to the construction company. In the Salmon case injuries were sustained from negligent blasting by an employee of the contractor. That case alone does not unequivocally hold that under such a contract the city would not be liable for injuries to third persons. However, when the Salmon case is read in connection with the case of Gerber v. Kansas City, supra, it is plain that the Supreme Court of Missouri, holds that a contractor who constructs a public improvement under a contract containing provisions similar to the ones before us is an independent contractor. [McGrath v. St. Louis, 215 Mo. 191.]

However, we do not think that the fact that the W. C. Mullins Construction Company was an independent contractor relieves defendant city from liability. Plaintiff's Instruction No. 2, which was the main instruction directing a verdict, required the jury to find that the construction company piled large quantities of rock in Twenty-Sixth street and that both defendants negligently failed to place a lantern or light of any kind upon the pile of rock or in the vicinity thereof, and that they both negligently permitted said pile of rock to be and remain in said street without any light or warning signal thereon, after they knew or by the exercise of ordinary care could have known that said pile was dangerous to persons driving along said street at night and could have anticipated that injury might result therefrom, in time, by the exercise of ordinary care, to have removed the rock or to have placed a warning signal on or near the rock, and in time, by the exercise of ordinary care to have prevented the accident. It is quite clear that this instruction does not proceed upon the theory that the negligent act of the construction company in placing the pile of rock upon the street was the act of the city, nor does the instruction proceed upon the theory that the city was chargeable with notice of everything that was done by the construction company. Plaintiff's evidence was to the effect that the pile of rock had been

upon the street for two full days before the accident which happened on the evening of December 24th. The inspector for the city testified that he was at work with the construction company on the 24th day of December, that he did not quit work until about 4:30 on the afternoon of that day and that he resumed work on the day after Christmas. The jury had a right to find that the rock was moved on the 22nd of December and that the inspector worked with the construction company thereafter. In this State it is held that a city is bound to exercise reasonable care to keep its streets free from obstructions and to use reasonable care to place warning lights on obstructions which are necessarily left in the street. We therefore hold that there was sufficient evidence to justify the instruction and to permit the jury to find that both the construction company and the city negligently permitted the obstruction to remain and failed to place a warning light thereon after they both knew of the existence of the danger in time to have remedied the situation before plaintiff's injury.

The appellants contend that the court committed error in permitting the contract, and especially sections five and six thereof, to be introduced in evidence and read to the jury, first, because plaintiff thereby improperly informed the jury that defendant Kansas City was protected by insurance against the liability in suit, and second because the contract was not pleaded and was not within the scope of the issues as defined by the pleadings. The appellants did not object to the introduction of the contract upon the ground that the plaintiff thereby improperly informed the jury that the city was insured. Therefore, that objection may not be considered here.

It is true the petition did not plead the contract, nor did it allege that the construction company and the city jointly placed the pile of rock on Twenty-Sixth street. The petition did not proceed upon the theory that the act of the construction company was the act of the city under the doctrine of *respondeat superior,* but only sought to hold each liable upon the theory that it was the duty of both to either remove or properly light the obstruction in the street, if they knew or by the exercise or ordinary care could have known that the pile of rock was dangerous to persons using the street. Respondent contends that Kansas City had the duty of maintaining its public streets in a reasonably safe condition for public travel; that it employed the construction company to pave Colorado avenue and that it was pursuant to such work that the rock was piled in the street and left unlighted; that in paving the street the construction company was the *alter ego* of the city and that the contract was admissible in evidence to show that the city itself was doing the work through the construction company and that it had

actual notice of the work that was being done and was in charge of the work through its inspector. Respondent relies upon the cases of Lindsay v. Kansas City, 195 Mo. 166, Schlinaki v. St. Joseph, 156 S. W. 823, Burton v. Kansas City, 181 Mo. App. 427, Robinson v. Kansas City, 181 S. W. 1004; Boyd v. Kansas City, 291 Mo. 622.

Those cases merely hold that where a city authorizes a contractor or licenses another to do something which will naturally result in rendering a street unsafe so that warning lights are necessary, no notice of the failure of the contractor or the third person to place lights upon the obstruction or defect is necessary, because the primary and nondelegable duty is on the city to exercise ordinary care to keep its streets reasonably safe. It cannot rely upon another to perform that duty. If it authorizes an obstruction or defect in a street, either by contract or by license, it has notice that the defect or obstruction will be placed in the street from the time it grants the authority therefor. On the other hand the Supreme Court of Missouri has held that if a contractor engaged in repairing a public street does things that render adjacent streets dangerous or hazardous to public travel it becomes the duty of the city, *upon notice of the condition,* to either remedy the condition or to place barriers upon the street and take it out of public use, or to give warning of the dangerous condition. [Hunt v. St. Louis, 278 Mo. 213.] In Salmon v. Kansas City, 241 Mo. 14, l. c. 42, the Supreme Court says that the true rule of liability is that where the work contracted for *necessarily constitutes an obstruction or defect* in the streets of such a nature as to render it unsafe or dangerous for the purposes of public travel unless properly guarded or protected, the city and the contractor are equally liable where the injury results directly from the acts which the contractor engaged to perform; but the city is not liable where the obstruction or defect in the street is wholly collateral to the contract work, and entirely the result of the negligent acts of the contractor or his servants. In such case the immediate author of the injury is alone liable. In the case before us the city authorized Colorado avenue to be paved. It therefore had notice that that street would be torn up, obstructed, and otherwise rendered unsafe for travel. But there was nothing about the contract to pave Colorado avenue which necessarily resulted in placing an obstruction in Twenty-Sixth street. Therefore, the contract did not dispense with notice of the obstruction to the city.

Nevertheless, we cannot hold that error was committed in permitting the contract to be introduced in evidence. The only objection made below was that the contract was not pleaded and that it was not within the issues defined by the pleadings. W. C.

Mullins Construction Company was a defendant and it was charged that that company negligently placed the pile of rock in the street and negligently failed to place warning lights thereon. That charge was met by a general denial. The contract was admissible as tending to prove the charge that it was the W. C. Mullins Construction Company that placed the obstruction in Twenty-Sixth street and that the duty was upon that defendant as well as upon the city to either remove the obstruction or place warning lights thereon. This was not a suit upon the contract and it was not necessary that it be pleaded.

Appellant Kansas City contends that the court erred in refusing Instructions No. A-12 and A-13. By Instruction A-12 defendant Kansas City sought to have the jury instructed that if the jury believed and found from the evidence that the rock with which the automobile came in contact was placed on the street between five-thirty and six o'clock in the evening of plaintiff's accident, then the verdict should be for Kansas City. Instruction A-13 was to the same effect, except that it required the jury to find that the construction company had placed the rock on Twenty-Sixth street and that Kansas City did not know that it was placed upon the street and did not know that the construction company had failed to place a red light upon said obstruction.

Instruction A-12 should have been given. The defendants' evidence was to the effect that the rock had been placed on Twenty-Sixth street between five-thirty and six o'clock in the evening of and just before plaintiff's injury; that the city inspector had quit work about four-thirty in the afternoon just as the construction company was completing another job of paving and before the rock was moved. If the jurors believed this evidence they would not have been justified in finding that the pile of rock had lain upon the street for such length of time that the city, by the exercise of ordinary care, could have known of the obstruction. Instruction A-13 cast a greater burden upon the city than was necessary for it to assume upon the present record. It required the jury to find for defendant upon issues concerning which there was no evidence, and upon which plaintiff had the burden of proof. The court declared in the process of the trial that the contract between the city and the construction company showed joint liability. We do not agree with this statement. The liability of the two defendants did not arise out of the contract. It arose out of the negligence of both in permitting the obstruction to remain upon the street unlighted. A duty was upon the construction company because it had actually created the danger. It was upon the city if it knew or by the exercise of ordinary care could have known of the existence of the danger in time to have remedied the situation

because of its nondelegable duty to use ordinary care to maintain its public streets in a reasonably safe condition for travel.

Complaint is made of the action of the court in overruling defendants' objections to the hypothetical question propounded to Dr. J. Park Neal, upon the ground that the question assumed, among other things, that plaintiff was pregnant and was delivered of a child; that she sometimes fell when she walked; that she had four or five attacks of acute appendicitis and was finally operated upon for that condition; that all these assumptions are outside the allegations of the petition; that the petition does not allege that any of said assumed facts resulted in any way from the injury claimed to have been sustained by plaintiff. Furthermore, it is urged that Doctor Neal had examined plaintiff a short time before the trial and at the end of the hypothetical question propounded to him he was asked.

"Now would you in your opinion as an expert say whether or not that the injury you found, whether or not, that was a permanent one?"

The doctor answered:

"Yes, taking into consideration the fact of what I found at the time of the examination, and the twenty-eight months that elapsed or practically twenty-eight months since the time of the injury, I should say it was a permanent injury."

It is suggested that upon his examination of plaintiff the doctor found a post operative hernia and other things which are entirely outside of the allegations of the petition, so that his conclusion was not based upon facts within the petition, or within the scope of the evidence. The objection to the hypothetical question, as shown by the record, was that it did not state all the evidence and did not state it clearly. Thereupon the following occurred.

"Mr. Kyle: Very well, I will ask you to correct anything I have incorrectly stated, and will ask you to supply anything I have omitted."

"Mr. Fyke: That burden cannot be forced on the defendants."

In this situation, the objection to the hypothetical question not being specific, and counsel for the objecting party refusing to supply the deficiencies therein, there is no reversible error in the action of the court in overruling the objection. The objection should have stated why the question was improper, what essentials were omitted therefrom, and what was contained therein which was not clear. [Orr v. Bradley, 126 Mo. App. 146, 103 S. W. 1149 and cases therein cited; Ridenour v. Mines Co., 147 S. W. 852; Kinlon v. Railroad, 216 Mo. 145; Edmondson v. Hotel Co. (Mo.), 267 S. W. 612; Standefer v. Fleming et al., 298 S. W. 134, 138.] It was held in Holton v. Cochran, 208 Mo. 314, 106 S. W. 1035, that

666

if a hypothetical question embraces the facts disclosed by the evidence, that is sufficient and is all the law requires. [Citing State v. Baber, 74 Mo. l. c. 297; Clevenger's Med. Juris, 544.] The court further held in the Holton case:

"And counsel, in propounding a hypothetical question to an expert witness, may assume any state of facts which the evidence tends to establish, and may vary the question so as to cover and present the different theories of facts. [Hicks v. Citizens Ry. Co., 124 Mo. l. c. 125, 27 S. W. 542, 25 L. R. A. 508.]"

We rule against defendants on this point.

It is urged as reversible error that the court permitted the introduction in evidence by plaintiff of the original petition and motion for security for costs. It is insisted this evidence was inadmissible for any purpose and was highly prejudicial in that its only purpose was to show plaintiff was poor. The rule is that if the testimony was admissible for any purpose, there was no error in its admission. It is plaintiff's contention that the petition was admitted for the purpose of showing compliance with the statute which requires notice to the city of a claim for damages with ninety days. It has been held that the filing of a petition within such period is a sufficient compliance with the statute. For this purpose the admission of the petition in evidence was proper. [Hunt v. City, 278 Mo. 213, 211 S. W. 673; Shuff v. City, 257 S. W. 844; Johnson v. City, 272 S. W. 703.]

The same ruling applies to the introduction in evidence of the motion for security for costs. In the Johnson case, just cited, this court held:

"It is insisted by the defendant that the sheriff's return shows that the petition was not served on the mayor, but on J. M. Lee, assistant counselor of the city. However, that may be, the filing of the motion for security for costs and the motion 'to make party defendants' show that within ninety days the city actually read and examined the petition filed by plaintiff in the circuit court, which contained all the elements of the notice required by the statute. [Costello v. Kansas City, 280 Mo. 576, 587, 219 S. W. 386.] There is nothing in Reid v. Kansas City, 195 Mo. App. 457, 182 S. W. 1047, and like cases cited by defendant, contrary to our holding herein. In the Reid case the suit was not filed until after the expiration of the ninety-day period, but there is a suggestion in that case (l. c. 463, 464, 194 S. W. 1047) that the city might be estopped in a case where the facts are similar to those in the case at bar, that is, by the action of the city counselor in leading plaintiff to omit giving notice within the required time by filing a motion for security for costs and the motion 'to make party defendant.'"

It appears that plaintiff introduced the filing marks on the motion for security for costs for the purpose of meeting any objections to lack of statutory notice to the city. It was held in Church v. Kansas City, 281 S. W. 1053, that the filing of such a motion cured any defect in the service of the summons as to time. The record herein discloses that the petition and motion were not read to the jury, but were introduced in evidence and examined by the court; since they were not read to the jury we are unable to say that the introduction was prejudicial error. [Mason v. Wilks, 288 S. W. 936.]

It is contended that the court erred in giving Instruction No. 1 which told the jury that it was the duty of defendant Kansas City to exercise ordinary care to keep the streets in a reasonably safe condition for public travel. It is contended that this instruction merely states an abstract proposition of law. When such an instruction is given and is not calculated to mislead the jury, it is harmless. [Hemphill v. Kansas City, 100 Mo. App. 653.] Instruction No. 2 directs the facts necessary to be found before plaintiff could recover. The mere fact that an instruction is abstract does not constitute reversible error. [Hemphill v. Kansas City, supra; Brown v. Railroad, 227 S. W. 1069; Cool v. Peterson, 189 Mo. App. 717, 175 S. W. 244.]

The main instruction herein given for plaintiff fully covered the facts, and, in construing the instruction complained of in that connection, we do not find reversible error. [Lammert v. Wells, 282 S. W. 487.]

It is urged against instruction No. 2 that it ignores issues raised by the answer; that it assumes as proved certain facts, that it purports to cover the entire care and directs a verdict. We have set out the substance of the instruction. The objections are untenable. The instruction requires a finding upon each essential point, does not assume any facts not proved, and requires a finding upon all elements of plaintiff's right to recover.

It is contended by appellant that the court erred in refusing to permit Dr. Horigan to testify concerning the extent of plaintiff's injuries; that she voluntarily allowed herself to be examined by Dr. Horigan in the presence of her husband, and that Dr. Horigan was therefore competent to tell what he learned from that examination, since he was not disqualified by the statute. It is not claimed that Dr. Horigan acquired his information while attending the plaintiff in a professional capacity to enable him to prescribe for her as a patient. It is therefore plain that if Dr. Horigan was incompetent to testify, that disqualification did not arise because of section 5418, Revised Statutes 1919.

The respondent contends that the defendants were not entitled, as a matter of right, to a physical examination of the plaintiff, nor to have an examination made by a physician of their own selection; that their only right under the law was to apply to the trial court for the appointment of a disinterested physician; that the plaintiff, by submitting to an examination by the defendants' doctors gave them a privilege they had no legal right to demand; that she did this to accommodate the defendants and with the hope of affecting a settlement prior to the date of the trial; that the disqualification of Dr. Horigan as a witness was not a question of privilege but a question of public policy, citing in support thereof the case of Micheals v. Harvey, 179 S. W. 735. In that case the court held that the witness was suffered to make the examination of plaintiff in an attempt to compromise her claim against the defendants; that to permit him to disclose the knowledge of her condition obtained in this manner would violate the rules promulgated to encourage the compromise of disputed claims.

The rule in the State of Missouri and in the United States generally is that courts do not concern themselves with the method by which a party has secured the evidence which he adduces in support of his contention; and hence, evidence which is otherwise admissible will not be excluded because it has been fraudulently, wrongfully or illegally obtained. [22 C. J. 192.] This rule is subject to an exception where the evidence has been obtained by search and seizure prohibited by the constitution, but that exception is not involved here.

Our Supreme Court in the case of Rose v. Bates, 12 Mo. 30, l. c. 49, held that whether or not a witness be competent depends in no wise upon his credibility, and that fraudulent conduct upon the part of a witness does not render him incompetent to testify. In State v. Sharpless, 212 Mo. 176, l. c. 198, our Supreme Court said:

"When papers are offered in evidence, the court can take no notice how they were obtained, whether lawfully or unlawfully; nor would they form a collateral issue to determine that question. This point was decided in the cases of Legatt v. Tollervey, 14 East 302, and Jordan v. Lewis, 14 East 306, note; and we are entirely satisfied that the principle on which these cases were decided is sound and well established. [Com. v. Dana, 2 Metc. 329.] To the same effect see I Greenl. Evid. (14 Ed.), sec. 254a; State v. Flynn, 35 N. Y. 64; Siebert v. People, 143 Ill. 571; Gindrat v. People, 138 Ill. 103. In Gindrat's case, Mr. Justice BAKER, when contrasting Boyd v. United States, 116 U. S. 616, on which defendant relies, with the above-cited cases in 14 East and 2 Metcalf, and the case

then being decided, said: 'We think that the cases last cited, as well as the present case, are clearly distinguishable from Boyd v. United States. In the latter case, the unconstitutional and erroneous order, process and procedure of the trial court compelled the claimants to produce evidence against themselves, and such order, process and procedure were also held to be tantamount to an unreasonable search and seizure, while here, and in the other cases cited, the question of illegality was raised collaterally, and the courts exercised no compulsion whatever to procure evidence from the defendants, and neither made orders nor issued process authorizing, or purporting to authorize, a search of premises or a seizure of property or papers, but simply admitted evidence which was offered, without stopping to inquire whether possession of it had been obtained lawfully or unlawfully.''

In the case of Springer v. Byram, 23 L. R. A. 1. c. 248, it was said that it is settled law that if parties sustaining confidential relations to each other hold their conversation in the presence and hearing of third persons, whether they be necessarily present as officers or as indifferent bystanders, such third persons are not precluded from testifying as to what they heard, citing decisions of the Supreme Courts of Alabama, Michigan, New York and Massachusetts.

In the case of Woods v. Town of Lisbon, 138 Iowa, 402, it was held that the testimony of a physician who was never consulted by the patient or the attending physician, but was simply informed of an operation to be performed and was present at the operation upon the request of other parties, was competent to testify concerning the knowledge which he obtained and the opinions which he formed, although he was not in the operating room with the consent of the plaintiff or her husband. At common law a physician was a competent witness. It follows that he is now competent under the same rules that apply to all witnesses so far as those rules have not been changed by statute. A reading of the statement of this case will show that there was no objection to the testimony of the physician upon the ground that plaintiff submitted to a physical examination in an attempt to procure a settlement. It is claimed that she did so partly *in the hope* of effecting a compromise. What she hoped is immaterial. The case upon which respondent relies only holds that the general rule which excludes evidence of what was done and said in an attempt to effect a settlement of a disputed claim is not admissible in evidence.

Respondent seems to think that the agreement by plaintiff's attorney that the plaintiff might be examined by two physicians was tantamount to an agreement upon the part of the defendants that they would not use any other physicians as witnesses. This agree-

ment justifies no such construction. Parties to a lawsuit are authorized to procure witnesses wherever they can without leave of their opponents. Even if the agreement between the attorneys could be held to be an implied agreement that plaintiff would be examined by no one except the two physicians named, yet the attorneys acted as agents for the plaintiff. As principal, she had the power to waive this agreement. The voluntary nature of her act in permitting an examination of her body is not affected by the fact that she had not theretofore agreed to submit to such an examination. With or without a previous agreement, plaintiff voluntarily permitted a third person to be present and take part in an examination which was calculated to reveal her physical condition. If that bystander had been an unskilled witness no one would have contended that he was incompetent to testify except as to his opinions. If he had been a skilled mechanic and during the course of that examination he had seen such things which justified him in expressing an opinion upon mechanical matters not commonly known, still there could be no reason to hold that he was incompetent as a witness. The plaintiff did not seek to exclude Dr. Horigan from that observation and examination of her body which was necessary to determine her physical condition. She simply states that she did not know he was a physician. In other words, she does not claim that her right of privacy has been unlawfully invaded, but simply stands upon the proposition that she would not have permitted an invasion of her right of privacy had she known the witness was competent to give his opinions in evidence. The courts permit men to be sent to the penitentiary upon the evidence of trespassers who go upon defendants' land and there discover evidence of the illegal manufacture of whisky. Men are convicted of crime upon evidence procured by tapping telephone and telegraph wires. Eavesdroppers are held to be competent witnesses. Therefore, this court must hold that a plaintiff in a personal injury suit who permits a bystander to assist in an examination of her physical condition runs the risk that that bystander, when called as a witness, will be permitted to state his opinions because of his special skill and training. We hold that the trial court committed error in refusing to permit Dr. Horigan to testify.

The appellant makes an assignment of error that the instructions on behalf of plaintiff in this case are prejudicial and misleading; that they are in conflict with ruling decisions of the Supreme Court and with this court. This assignment is totally insufficient to call attention to any particular instruction or to any supposed defect therein. Such an assignment must be disregarded.

Appellants assign as error that plaintiff's counsel in his closing argument was guilty of conduct which was prejudicial to defendant, and that the verdict is excessive and that certain questions were im-

properly answered by the physicians over the objections of defendants. It is not likely that a discussion of these assignments would be of any benefit upon a retrial. The objection to plaintiff's instruction No. 3, the instruction upon the measure of damages, is that it did not require the jury to find that the negligence of defendants was the direct cause of the injuries for which she was to be compensated. If the defendant feared that the jury might conceive the idea that it was authorized to allow damages to plaintiff for injuries which were not the result of the defendant's negligence it was their duty to ask an instruction which would have confined the deliberations of the jury with more particularity. [Fisher v. St. Louis Transit Co., 198 Mo. 562; Taylor v. Iron Co., 133 Mo. 349; Geisman v. Electric Co., 173 Mo. 654; Browning v. Railroad, 124 Mo. 55; Powell v. Railroad, 255 Mo. 420.]

The judgment is reversed and the cause remanded. *Lee, C.,* concurs.

PER CURIAM:—The foregoing opinion by BARNETT, C., is hereby adopted as the opinion of the court. All concur, except *Trimble, P. J.,* absent.