Eugene R. DIENER, Appellant,

v.

MID-AMERICAN COACHES, INC.,
a Corporation, Respondent.

No. 50224.

Supreme Court of Missouri,

Division No. 1.

April 13, 1964.

Motion for Rehearing or for Transfer to Court En Banc Denied May 11, 1964.

Henry C. Stoll, Koenig, Dietz & Siebels, William L. Mason, Jr., St. Louis, for appellant.

F. X. Cleary, Paul S. Brown, Moser, Marsalek, Carpenter, Cleary & Jaeckel, St. Louis, for respondent.

HOUSER, Commissioner.

Eugene R. Diener, a passenger on a bus owned and operated by Mid-American Coaches, Inc., brought an action against the bus company on the theory of res ipsa loquitur for damages for personal injuries sustained by him when the bus left the road and ran off an embankment. The bus company, admitting only that there was a collision and that plaintiff was a passenger on its bus, denied generally, and defended on the theory that the bus left the road because the braking and steering mechanisms of the bus became inoperative due to a collision between the bus and an oncoming automobile, as a result of the automobile crossing the center line and colliding with the bus in such close proximity that the bus driver could not avoid a collision. A jury returned a verdict for defendant, and plaintiff appealed. We have jurisdiction since the prayer of the petition was for $30,000.

Plaintiff, a fare-paying passenger, was riding on the bus at 2 a. m., proceeding west on Highway 66 near Pacific. The bus was traveling 40 miles an hour. The weather was cold and clear and the surface of the highway was dry concrete. An approaching eastbound Chevrolet driven by one McNamee moved from its proper position on the south side of the highway, over the center line, partially onto its wrong or north side, and into collision with the bus, which was on its right or north side of the highway. The collision occurred on a bridge. The bus driver testified that when the Chevrolet was the length of a car and

a half from the bus it "pulled" from its proper lane "right into the bus." According to him, the bus lights went out, and when the foot brakes were applied the pedal went to the floor, and had no effect on the forward movement of the bus. The steering mechanism was damaged. The driver tried to straighten out the bus by pulling on the steering wheel to the right but the bus did not respond. The bus proceeded 200 feet from point of impact, left the pavement and ran down an embankment off the traveled portion of the highway and was wrecked. The driver stayed at the controls, holding the steering wheel. He made no attempt to use the emergency brake although the lever actuating the emergency brake was within easy reach. There was no evidence that the emergency brake was damaged or affected by the collision. The emergency brake mechanism was not located in the area of the bus damaged by the collision.

McNamee died the same day without making a statement.

■ The first point for decision is whether the court erred in admitting expert testimony given by Dr. Eugene Tucker, a pathologist, whose duty it was to investigate deaths for the county coroner, to the effect that McNamee's ability to drive was seriously and detrimentally affected by alcohol. Dr. Tucker drew blood out of McNamee's heart after he expired, and had it tested in the laboratory. The test showed .35 grams of alcohol per one hundred millimeters of blood. The minimum percentage of alcohol which will render a person incapable of properly driving an automobile is .15 grams.

Plaintiff contends that this evidence was incompetent because obtained by the unlawful and criminal desecration of a dead body amounting to an unconstitutional search and seizure, conduct repugnant to common ideas of decency; that those who participated in this procedure were guilty of a crime, and the use of the data obtained was against public policy; that only evidence lawfully obtained may be adduced.

■ We are of the opinion that this contention cannot be sustained. "The courts do not concern themselves with the method by which a party has secured the evidence which he adduces in support of his contentions; and hence, in the absence of constitutional or statutory restrictions, evidence which is otherwise admissible will not be excluded because it has been obtained fraudulently, wrongfully, or illegally." 31A C.J.S. Evidence, § 187; Plater v. W. C. Mullins Const. Co., 223 Mo.App. 650, 17 S.W.2d 658. There is an exception to this rule where the evidence has been obtained by a search and seizure in violation of the constitution, Plater v. W. C. Mullins Const. Co., supra, but this exception does not aid plaintiff. The guaranteed right is personal in nature, and plaintiff had no standing to complain or urge the constitutional question. State v. Green, Mo.Sup., 292 S.W.2d 283, 286. It was not plaintiff's blood that was drawn but McNamee's, and there is no showing of any relationship between plaintiff and McNamee which would entitle plaintiff to raise the question of a violation of constitutional guarantees enjoyed by McNamee. Nor need we determine the question if the interest sought to be protected is the right of privacy because "the right of privacy is a personal one which in the absence of statute, dies with the person to whom it is of value and cannot be claimed by his estate or next-of-kin," Fretz v. Anderson, 5 Utah 2d 290, 300 P.2d 642, 646, or by a stranger. Nor can this plaintiff object to the evidence on the basis that it was obtained as a result of the desecration or mutilation of the body of McNamee. The two men were complete strangers, and plaintiff would have no right to assert the inviolability of the body, or to object to the findings of the pathologist as a result of the examination of a body in which plaintiff had no right or interest. There are other reasons why plaintiff is not in a position to raise this question. The contention assumes that Dr. Tucker did not have the consent of the next of kin to draw blood from McNamee's body, but this is not borne out by the record, which is silent on the question.

Furthermore, no objection was made at the trial on this ground when the evidence was offered, and this ground for exclusion of the evidence was not raised in plaintiff's motion for new trial. Therefore the so-called constitutional point was not preserved at the earliest opportunity, as required.

Plaintiff further contends that the expert testimony was not admissible because the intoxication of McNamee was not in issue; that the issue of intoxication had not been raised in the pleadings; that proof of this issue was not necessary because there was sufficient other evidence to establish that the collision was caused by McNamee's negligence; that the expert testimony was shown "cumulatively" and in bad faith for the sole purpose of creating sympathy for defendant and its driver and passion and prejudice against plaintiff.

■■ Notwithstanding the issue of intoxication was not affirmatively raised by the pleadings, evidence of the fact that McNamee's faculties were impaired by the use of alcohol was admissible under the general issue. 5A Am.Jur. Automobiles and Highway Traffic, § 942, p. 832; Boehm v. St. Louis Public Service Co., Mo.Sup., 368 S.W.2d 361, 371, 372. This evidence bore directly upon an important issue in the case, whether the bus driver was negligent in colliding with the Chevrolet, thereby causing the mechanical systems of the bus to go awry, or whether the collision was caused by the negligence of another.

■ The transcript does not support plaintiff's contention that the expert evidence as to McNamee's intoxication was cumulative; or that defendant "already had plenty of evidence" that McNamee caused the collision; or that nobody denied that McNamee was on the wrong side of the road when he hit the bus; or that it was not necessary to show that he was drunk and that this evidence was offered in bad faith for the sole purpose of prejudicing the jury in favor of defendant and against plaintiff.

The testimony of several of the witnesses was equivocal on the question of the position of McNamee's automobile with reference to the center line. When the expert evidence was offered defendant had not then been freed of negligence in connection with the collision, nor had the negligence of McNamee been established. The bus driver had not yet testified. The manner in which McNamee's automobile had been driven was still in dispute and McNamee's intoxication and incapacity to drive was a fact still to be proved in support of defendant's theory that the cause of the collision and the consequent running of the bus off the highway was McNamee's intoxication and incapacity to drive with care. The expert evidence was not cumulative; and we do not find that it was offered in bad faith or to inject prejudice, but rather that it was offered in support of a legitimate defense.

■ The second point for decision is whether the court erred in giving Instruction No. 2, which submitted defendant's theory of defense.

No. 1 directed a verdict for plaintiff upon a finding that "on the occasion described in the evidence" plaintiff was a fare-paying passenger on the bus; that when the bus reached a certain point it proceeded from the roadway onto the left or south side of the shoulder of the highway and over the embankment, and that from all of the evidence in the case the defendant was negligent, unless the jury found from other facts that "the occurrence" was not due to negligence on the defendant's part.

No. 3 directed the jury with respect to the charge of negligence that if the McNamee automobile crossed the center line into the westbound lane and collided with the bus and that negligence of the defendant concurred, combined and contributed with the action of McNamee and his vehicle to cause the plaintiff to sustain injury, plaintiff should have a verdict, because if defendant was negligent and defendant's negligence contributed to cause the injury, then defendant could not make use of Mc-

Namee's concurring negligence to defeat plaintiff's claim, even if defendant was less negligent than McNamee.

No. 2, the instruction challenged, directed a verdict for defendant upon a finding of these facts: that the bus was operating westwardly, keeping to the right of the center line; that McNamee was operating an automobile eastwardly; that as it approached the bus the McNamee automobile crossed the center line, entered the westbound lane and came in contact with the left front corner of the bus, the McNamee automobile starting to its left toward the westbound lane when the bus was in such proximity that a collision was unavoidable; that as a result of the collision the braking and steering mechanisms of the bus became inoperative "and that the bus started to its left and continued to its left and went off the highway, and if you further find and believe from the evidence that the defendant was not negligent *on the occasion in question * * *.*"* (Emphasis ours.)

Plaintiff contends that plaintiff pleaded, proved and by Instruction No. 1 submitted a res ipsa loquitur case founded upon an *occurrence* identified as the bus running off the highway but that defendant, not properly conversing No. 1 but creating a conflict therewith, by No. 2 submitted a *different occurrence*—identified as the prior collision—and directed a verdict upon a finding that defendant was not negligent on said prior occasion; that the italicized words of No. 2 refer solely and only to the collision between the vehicles, and cannot be "tortured" by any proper use of language to refer to any other event than the collision, and that plaintiff's res ipsa loquitur case was thereby left dangling. Plaintiff says that while No. 2 was apparently intended as a converse instruction, the only "passing reference" to the plaintiff's case is contained in the words "and went off of the highway," found near the end of the instruction.

As a matter of semantics we attribute a broader and more inclusive meaning to the term "occasion in question" than does plain-tiff. Used in a verdict-directing instruction drawn to present the theory of the defense, the term "occasion in question" appears to us to have been used to express the concept of the occurrence of facts or the condition of affairs existing at the time and place in question. In the background of a sequence of different events (vehicles approaching from opposite directions; the automobile crossing over the center line and colliding with the bus; the guidance and stopping systems of the bus being rendered inoperative; the consequent unusual movement of the bus and its leaving the highway; the ensuing injury to an occupant) the most accurate and meaningful interpretation of the term "occasion in question" would be to apply it to the entire panorama of events, and not restrict it to one of them (the collision) to the exclusion of all others.

We therefore conclude that defendant's use of the term "the occasion in question" in No. 2, just as plaintiff used the term "the occasion described in evidence" and "the occurrence" in No. 1, did not refer solely and only to the collision but incorporated the events leading up to the collision, the collision itself, and the results of the collision, including the movement of the bus to the left and off the highway, over the embankment and the resultant wrecking of the bus.

Instructions Nos. 1 and 2 are not in conflict. Under these two instructions if the jury believed that the bus left the highway and went over the embankment and that the defendant was negligent, a verdict could be found for plaintiff, but if the jury believed that the cause of the bus leaving the highway was a collision which took place not because of defendant's negligence but because of a third party's negligence, and that defendant was not negligent, the verdict would be for defendant. Plaintiff's res ipsa submission thus was not "left dangling," as charged. The instructions fairly presented plaintiff's case. With the added advantage of the favorable language of Instruction No. 3, plaintiff is not entitled to complain of the instructions.

Plaintiff's cases of Thaller v. Skinner and Kennedy Co., Mo.App., 339 S.W.2d 487; Braun v. Hoffmeister, Mo.Sup., 366 S.W.2d 406 and Coit v. Bentz, Mo.Sup., 348 S.W.2d 941, examined, are found inapplicable to the solution of the question raised by this point.

■ Plaintiff further contends that the submission in Instruction No. 2 that the braking mechanism of the bus became inoperative is not supported by the evidence and is contrary to the evidence, because under the statutory requirement of "two sets of adequate brakes, kept in good working order," § 304.560, V.A.M.S., "braking mechanism" as used in No. 2 meant not only the foot brakes but also the emergency brake, which although readily available to the driver was not used by him; that there was no evidence that the emergency brakes were rendered inoperative or affected by the collision, and the emergency brake could have been used while the bus traveled the 200 feet on the highway before it went over the embankment.

The bus driver testified that the bus was overhauled roughly two weeks before the accident and that the brakes were good on this particular night; that when the collision occurred the lights went out on the bus, the air went out and there were "No brakes"; that he put his foot upon the brake, "but there was none. It was all the way through the floor." "Q. How do you know the brakes went out? A. I seen the car, I hit the brakes (snapping fingers), and [the brake pedal] went all the way to the floor." The emergency brake does not work directly on the rear wheels, but applies to the drive shaft; through the drive shaft it affects the rear wheels, like private cars. The emergency brake "is just used as when you stop your bus you put on your emergency brake and keep it from rolling." The driver testified that he made no attempt to use the emergency brake after the collision; that all he did was to try to keep the bus from going over on the left side of the bridge railing—it was heading that way—and that would have been a "forty foot drop."

The submission that the braking mechanism of the bus became inoperative as a result of the collision is supported by the foregoing evidence. The question was negligence *vel non*. The negligence charged was not that defendant operated the bus with inadequate brakes but negligence under the res ipsa loquitur theory. The jury evidently found, as it had a right to find, that the unusual movement of the bus to the left, off the highway and over the embankment was not due to any negligence on the part of the bus driver. Under the evidence the jury could have found that the bus driver did his best to avoid leaving the highway by devoting his attention to his attempts to steer the bus so as to keep it on the highway and to stop by applying the foot-brake pedal, but that the foot brakes were rendered inoperative; and that the bus driver is to be excused for not having resorted to the emergency brake, because he was preoccupied with his attempts to keep the bus on the highway and avoid going through the bridge railing.

No error appearing, the judgment is affirmed.

COIL, C., concurs in result.

WELBORN, C., concurs.

PER CURIAM.

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

All of the Judges concur.