Howard HAGER and Mildred Marie Hager, Plaintiffs-Respondents,

v.

Barry G. McGLYNN, Defendant-Appellant.

No. KCD 26423.

Missouri Court of Appeals, Kansas City District.

Dec. 2, 1974.

Motion for Rehearing and/or Transfer Denied Dec. 30, 1974.

Application to Transfer Denied Feb. 10, 1975.

Roy A. Larson, Jr., Sprinkle, Carter, Larson, Myerson, & Fitzgerald, Kansas City, for defendant-appellant.

Lantz Welch, Kansas City, for plaintiffs-respondents.

Before PRITCHARD, P. J., and SWOFFORD, SOMERVILLE and TURNAGE, JJ.

TURNAGE, Judge.

This case presents for the first time in Missouri the question of permissive joinder by the plaintiff of two defendants who collided with the plaintiff at different times and places.

The plaintiff filed his petition in two counts. The first count was against defendant McGlynn and alleged a collision between the plaintiff and the defendant's automobiles on January 12, 1969, and alleged as a direct result thereof plaintiff was injured in his head, right eye and nose, neck, mid and lower back, left elbow, left knee and left ankle.

In his second count, plaintiff alleged he was riding a three-wheel motorcycle in the line of duty as a police officer in the City of Kansas City, when his cycle was struck from the rear on May 12, 1969, by defendant Tuttle. Plaintiff alleged as a result of this accident he was injured in his head, neck and right shoulder; abdomen, left rib, low back and lower extremities, and that he suffered an aggravation of his pre-existing injury to his left knee and leg.

The plaintiff prayed damages separately against each defendant.

Plaintiff's wife also filed her claim for damages resulting from the injuries allegedly suffered by her husband in separate counts against each defendant.

Each defendant moved for a separate trial prior to the commencement of trial and such motions were overruled.

The jury returned a verdict against defendant McGlynn in favor of plaintiff for $45,000.00 and for plaintiff's wife and against defendant McGlynn in the amount of $7,000.00. The jury also found in favor of the plaintiff and against defendant Tuttle in the amount of $20,000.00 and in favor of plaintiff's wife and awarded her the sum of $3,000.00.

Both defendants originally appealed, but after the notice of appeal was filed, defendant Tuttle dismissed his appeal. The only appeal remaining is that of defendant McGlynn from the judgment entered on the verdicts in favor of the plaintiff and his wife against that defendant.

Defendant McGlynn, in his first point, complains of the refusal of the trial court to grant him a separate trial because of the improper joinder of both defendants in one suit, although in separate counts, by the plaintiff. It must be remembered this complaint of error is founded on the action of the trial court prior to commencement of trial, and is considered here as of that time.

Rule 52.05 of the Rules of Civil Procedure, V.A.M.R., provides as follows:

"Permissive Joinder. All persons may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrences or series of transactions or occurrences and if any question of law or fact common to all of them will arise in the action. A plaintiff or defendant need not be interested in obtaining or defending against all the relief demanded. Judgment may be given for one or more of the plaintiffs according to their respective rights to relief, and against one or more defendants according to their respective liabilities."

This court had occasion to pass on the propriety of consolidating two lawsuits which originally were brought separately as a result of two separate and independent accidents in State ex rel. Allen v. Yeamen, 440 S.W.2d 138 (Mo.App.1969). In that case it was held the trial court was authorized to consolidate under Rule 66.-01(b) two cases which had been brought following accidents which had occurred on October 20, 1962, and November 5, 1962. It was alleged the injuries received in the first accident were aggravated in the second. In that case, it was pointed out the consolidation rule only requires the separate actions to involve common questions of law and fact. The court held there the question of the extent of the injuries the plaintiff received resulting from the first accident and the extent of the injuries the plaintiff received as result of the second accident did involve a common question of fact.

■ The law has thus been settled in Missouri since *Yeamen* that two separate and independent accidents involving injury to the same parts of the body of the same plaintiff does involve a common question of fact. Here, plaintiff alleges some independent injuries in the second accident, but also alleges aggravation of the left knee injury received in the first accident. For this reason, the second requirement of Rule 52.05 requiring a common question of fact has been met in this case. The fact of some new and independent injuries in the second accident would not eliminate the common question presented by the aggravation. The only remaining question is whether or not the plaintiff's injuries in the present suit may be said to arise out of the same transaction, occurrence, or series of transactions or occurrences.

Before turning to that question, it should be noted that Rule 52.05 permits the joinder of multiple defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief. Here the plaintiff was asserting only several liability against the two defendants and made no attempt to allege any joint liability; nor did he allege any alternative theory of liability.

In considering this question, it is necessary to bear in mind the distinction between differing theories upon which joinder has been permitted. One theory, as set out in State ex rel. Blond v. Stubbs, 485 S.W.2d 152 (Mo.App.1972), is the liability of the original tort-feasor for medical malpractice resulting from treatment for the injuries originally received. This is not the theory in this case.

Another theory is that the plaintiff, through the joint, concurrent, several or independent torts of two or more defendants, sustained an injury said to be indivisible. This term is applied because of the pleaded or proven inability to apportion between or among the defendants the precise harm each inflicted upon the plaintiff. In this situation, the courts have broken down the common law barriers brought on by the definition of joint tort-feasors and have allowed the plaintiff to sue all defendants in one action and has imposed joint liability. Leading examples of this theory are Maddux v. Donaldson, 362 Mich. 425, 108 N.W.2d 33, 100 A.L.R.2d 1 (1961), and Sutterfield v. District Court, 165 Colo. 225, 438 P.2d 236 (Colo.S.Ct.1968). In *Maddux* the plaintiff's car was struck by two different cars within thirty seconds. In *Sutterfield* the two impacts were about nine months apart, but the pleading on which the case was decided was the allegation of a single or indivisible injury caused by the two separate accidents.

In this case, the third theory is presented of two independent accidents in which injuries alleged to have been received in the first are alleged to have been aggravated in the second.

The question for decision on the pleading in this case was decided by the Supreme Court of Ohio in Ryan v. Mackolin, 14 Ohio St.2d 213, 237 N.E.2d 377 (1968). In that case, the plaintiff was seated in an automobile on December 26, 1963, when it was struck from the rear by another vehicle and the plaintiff incurred injury to his back. On May 20, 1964, the same plaintiff was again rear-ended by a different defendant and injury to his back as a result of both impacts was alleged. The plaintiff joined both defendants in one action claiming judgment against the defendants either jointly or severally. The Ohio Court noted this was the first case in that state to be considered on the question of whether the two defendants could be joined by the plaintiff in a single suit. The court quoted the pertinent part of the Ohio Revised Code allowing joinder which is identical in language to Rule 52.05 in this state.

The Ohio Court stated at l.c. 237 N.E.2d 380:

"Thus, the code no longer contains any impediment to the joinder of causes of action of the kind asserted by the plaintiff in this case. The statutory changes reflect a constantly developing policy in the pursuit of simplified pleading and procedure. To save time and to relieve court congestion, parties are encouraged if not commanded, to litigate all their claims in one action, except to the extent that joinder of multifarious and complex issues would produce confusion and prejudice. Defendants and the courts are thus saved from vexation caused by multiple litigation."

The court found the joinder was in accord with that policy, and held the successive rear-end collisions constituted a series of occurrences causing the injuries for which the plaintiff seeks recompense. The court also held the causal contribution by each defendant to the plaintiff's compounded injury is a question of fact common to all the parties and may more effectively be determined in one trial.

The court then stated at l.c. 237 N.E.2d 382:

"The dimension of that statute is remedial not substantive, viz., to permit the adjudication in one action of the respective liability of each defendant which might otherwise, but not as fairly, be ascertainable in separate actions brought against them individually, and not to

force either defendant to pay (and, indeed, to assist him in not paying) more than his theoretical share of the damages accruing out of a confused situation which his wrong has helped to create, or more than is shown to have been caused by his wrong. See annotation 100 A.L. R.2d 16, 32."

The court then concluded under the facts in that case that each defendant should only be responsible or liable prorata for that part of the damages attributable to his particular factor of causation and that several judgments only were warranted against different independent tort-feasors whose torts are not concurrent and against each only to the extent and in the proportion that his default proximately contributed to the plaintiff's injury. The court further pointed out the burden of proof of all of this would remain upon the plaintiff.

While California did not have a statute precisely the same as Rule 52.05, the observations made in Kraft v. Smith, 24 Cal.2d 124, 148 P.2d 23 (1944) are applicable and persuasive in deciding the case at bar. There the plaintiff had sued two doctors who had treated her successively, and negligently, according to the plaintiff. In allowing the plaintiff to sue both doctors in one action, the California Supreme Court stated at l.c. 148 P.2d 26:

"If upon the trial it develops that neither defendant was guilty of negligence then no prejudice will have been occasioned by their joinder in the one action. If it develops that only one defendant was negligent in his treatment, the assessment of the verdict will be simple. If, on the other hand, it appears that negligence of both defendants contributed proximately to cause an injury for which plaintiff is entitled to recover, it may be a matter entailing great difficulty of proof as to the amount in which each defendant is responsible . . .

"To require separate actions and separate trials in such a situation would enhance the difficulties of proof and tend to obstruct, rather than promote, justice . . .

"Through having both defendants before the court at the same time and in the same action, it can be expected more sanguinely that a jury should arrive at soundly based and just verdicts."

Rule 20(a) of the Federal Rules of Civil Procedure is identical to Rule 52.05. The Federal Courts have allowed joinder under that Rule in similar situations. See Poster v. Central Gulf Steamship Corporation, 25 F.R.D. 18 (D.C., E.D.Pa.1960).

The defendant in this appeal relies on Sommers v. Korona, 54 Ill.App.2d 425, 203 N.E.2d 768 (Ill.App.1964). That case concedes the Rules of Civil Procedure should be liberally construed, however, the court decided joinder would not be permitted in a factual situation similar to the case at bar. The court made no analysis of the problem and in so deciding, relied solely on some general statements from C.J.S. and American Jurisprudence. The reasoning of the court in that case does not go to the merits of the problem and is not persuasive in reaching a decision here.

Defendant also relies on Caygill v. Ipsen, 27 Wis.2d 578, 135 N.W.2d 284 (1965). However, Wisconsin had a statute containing different provisions from the rule applicable here which accounts for the decision in that case. Other cases cited by defendant are likewise distinguishable.

The statements from *Ryan* and *Kraft,* quoted above, are the most soundly reasoned approach to the problem and the decision in *Ryan* is persuasive in reaching a conclusion here.

The allegation in the petition concerning the injury of the left knee in the first accident, and the aggravation of that injury in the second accident, together with the allegation of injuries as a result of both accidents to the head, neck and low back, indicate that a common question of fact existed as in *Yeamen* and *Ryan*. Separate trials in this case would result in the situa-

tion in which two juries sitting separately would each be faced with the argument that the greater portion of the injury was caused by the absent defendant. This situation led the Colorado Supreme Court in Sutterfield v. District Court, 438 P.2d 236 (1968) to conclude at l.c. 240:

"The situation of two juries faced with the task of apportioning liability for a single injury could very well result in the plaintiffs' receiving aggregate verdicts for much less than the admitted amount of permanent injuries, or, on the other hand, for much more than the admitted amount of permanent injuries. Justice would not be well served by either of such results."

It must further be observed that under Rule 52.05(b) the trial court is authorized to make such orders as will prevent a party from being embarrassed or delayed and the court is authorized to order separate trials or make other orders to prevent delay or prejudice.

■ Taking the view that the rules must be liberally construed, and that it is more expeditious to have all of the parties before the court so that inconvenience and duplicity of trials may be eliminated and the ends of justice better served, it is concluded that joinder was permissible in this case on the basis of the pleading prior to trial.

■ This is not to say that in every case in which there are separate accidents the plaintiff may join all defendants. However, when the injuries are alleged to be indivisible, or to have been aggravated in another accident, then joinder is permissible. In that situation, justice is far more likely to be served with all parties present and the issues being fully presented to one jury, and that jury being charged with the responsibility of finding both the question of negligence and the amount of damages, if any.

Defendant's next contention is error in admitting evidence that defendant McGlynn had been drinking prior to the acci-

dent. There was evidence, both by way of reading from defendant McGlynn's deposition and by questions from his own counsel, that McGlynn had consumed as many as three scotch and waters and one liqueur earlier in the evening.

Defendant argues that such evidence was particularly prejudicial and designed to inflame and prejudice the jury against him.

■ Plaintiff introduced evidence by way of admissions of defendant McGlynn that such defendant entered the intersection of 14th and Oak Streets at 2:00 A.M. against a red light, at a speed of 25 to 30 miles per hour and struck the plaintiff's automobile without applying his brakes.

Both parties cite Cheatham v. Chartrau, 237 Mo.App. 793, 176 S.W.2d 865 (1944). This case, together with Boehm v. St. Louis Public Service Company, 368 S.W.2d 361 (Mo.1963), states the general rule that evidence of drinking is admissible when coupled with evidence of erratic driving. In *Boehm* the evidence of erratic driving consisted of the driving of a motor scooter through a stop sign without stopping, at 20 miles per hour, with no headlight. The evidence of erratic driving in this case made the evidence of drinking on the part of defendant McGlynn admissible.

Defendant cites Daniels v. Dilinger, 445 S.W.2d 410 (Mo.App.1969) in which a new trial was granted to a passenger because of evidence being admitted concerning her drinking. In that case, there was no evidence that her drinking in any way contributed to the accident. Defendant also relies upon Doisy v. Edwards, 398 S.W.2d 846 (Mo.1966), in which the court recognized the rule laid down in the *Boehm* case, but noted in that case there was no evidence of erratic driving.

■ This defendant also complains of the refusal of the court to give his Instruction "A". This instruction was as follows:

"The evidence of plaintiff Howard Hager's injury to his low back and left knee, and the damages resulting therefrom, oc-

curring after the second accident, is withdrawn from the case against defendant McGlynn and you are not to consider such evidence in arriving at your verdict in the McGlynn case."

Instruction No. 8 told the jury they were to award the plaintiff such sum as they believed would fairly and justly compensate the plaintiff for the damages, both present and future, which he sustained as a direct result of the accident of January 12, 1969.

It will be noted the substance of defendant's Instruction "A" is fully covered in the measure of damages instruction in which the jury was told to compensate the plaintiff as against McGlynn only for those damages resulting from the McGlynn accident. Instruction No. 8 covered not only the left knee and back, but all injuries. The jury was not permitted by the instructions in this case to award plaintiff any sum against McGlynn for any injury resulting from the second accident. Thus, the giving of defendant's Instruction "A" would have added nothing to Instruction No. 8 which was given. The factors which this defendant wanted the jury to consider by Instruction "A" were fully given to the jury by Instruction No. 8. For this reason, there was no error in refusing defendant's Instruction "A".

■ Defendant further states the judgment and verdict is improper and should be set aside because it is excessive and indicates bias, prejudice and passion on behalf of the jury. Under this point, defendant argues for remittitur; however, it is apparent if the verdict were the result of bias, prejudice and passion, the entire judgment would have to fall and remittitur could not cure such infirmity. However, it is not necessary to decide whether the verdict was the result of bias, prejudice and passion on the part of the jury because the mere size of the verdict—the fact that it may be excessive—does not in and of itself establish that it was the result of bias, passion or prejudice without showing some other error committed at the trial, Boehm

v. St. Louis Public Service Company, supra. No other error is suggested, so the mere size of the verdict cannot be taken as any evidence of bias, passion or prejudice.

■ Further, it is well established that the amount of the verdict, standing alone, will not authorize an appellate court to reverse a judgment on the basis of passion and prejudice on the part of the jury. Such action may be taken by the trial court, but not by the appellate court, Erny v. Revlon, Incorporated, 459 S.W.2d 261 (Mo.1970).

For these reasons, this court cannot find the verdict to be the result of bias, prejudice or passion.

Defendant states the court erred in giving Instruction No. 8, the measure of damage instruction. This instruction was MAI 4.01, modified to include the date of the first accident as authorized by the Notes on Use under that instruction.

Defendant states this instruction constituted a roving commission, was without a factual foundation because of the failure to show a causal connection between the left knee and the complaints the plaintiff had about his knee at the time of trial, and because of a failure to prove the injuries resulting from the first accident.

The evidence clearly showed, and there was no dispute at the trial, that plaintiff suffered certain injuries as a result of the first accident. This included a brain concussion which resulted in headaches, loss of memory, blurred vision and loss of hearing. The plaintiff testified he was still experiencing headaches at the time of trial. The plaintiff also suffered an injury to his left ulnar nerve at the elbow, necessitating an operation for an ulnar nerve transplant. The medical evidence was that this resulted in permanent residual numbness and palsy in his left arm with a partial loss of the use of that arm. He also had a lumbo sacral sprain for which a myelogram was performed to determine whether or not there was a ruptured disc.

It was further undisputed the plaintiff sprained his left ankle and his left knee.

There can be no doubt the plaintiff received numerous injuries about which there was substantial evidence as a result of the first accident. This would supply the necessary evidentiary foundation for the giving of Instruction No. 8, the measure of damage instruction, and would eliminate any roving commission for the jury to speculate regarding what injuries the plaintiff did receive in the first accident.

The only ground upon which this defendant alleges error in the giving of this instruction concerns the injury to the left knee. As noted above, there was no dispute the plaintiff received some injury to his left knee at the time of the first accident. There was also evidence the plaintiff had no further difficulty with his left knee after about two weeks from the first accident, and in the second accident he received some lacerations to his left knee. Dr. Wertzberger testified the arthrotomy which was performed on the left knee was caused by a condition known as chondromalacia. Dr. Wertzberger testified in his opinion the plaintiff's left knee was injured in the first accident and aggravated in the second accident and because the plaintiff had no complaints concerning his left knee prior to the first accident, he was of the opinion the condition in his left knee was the result of the accidents.

■ Dr. Ellfeldt testified there were no complaints which the plaintiff was making at the time of trial which could be attributed to any injuries he received to his left knee in the second accident. In this situation, there was ample evidence from which the jury could find either the plaintiff's left knee injury had fully recovered after the first accident, or he sustained an injury in the first accident which was aggravated by the second accident. In this situation, it was peculiarly within the province of the jury to apportion the damages as to the left knee to the respective causes, Thompson v. Healzer Cartage Company, 287 S.W.2d 791 (Mo.1956); Belisle v. Wilson, 313 S.W.2d 11 (Mo.1958).

This case would present a much more difficult question if the only injury the plaintiff had received in the first accident were to his left knee. However, with all the evidence concerning other injuries which admittedly were received in the first accident, there was substantial evidence to support the giving of Instruction No. 8. Obviously, it is impossible to determine from the jury's verdict what injuries to the left knee were found to be the result of the first accident, if any. Since there was substantial evidence of other injuries resulting from the first accident, the trial court cannot be convicted of error in giving the approved measure of damage instruction.

■ It should be noted the plaintiff appeared to change horses in midstream when the evidence had been completed. In his pleading he alleged injuries to the left knee in the first accident with aggravation of those injuries in the second. However, when it came to submitting his case to the jury, he did so on the theory of separate injuries as shown by the measure of damage instruction, even though the evidence would have supported an instruction concerning injury to the left knee in the first accident with aggravation in the second.

This would not affect the propriety of the joinder since that question was decided by the trial court on the basis of the pleadings. Furthermore, the defendants did not ask the trial court to take any action as a result of the plaintiff changing mounts, either under Rule 52.05 or by any instructions other than Instruction "A".

The judgment is, therefore, affirmed.

All concur.