Desiree J. SEWELL, Avery E. Sewell, and Anita Sewell, Plaintiffs-Respondents-Appellants,

v.

MFA MUTUAL INSURANCE COMPANY, Defendant-Appellant-Respondent.

Nos. 10809, 10810.

Missouri Court of Appeals, Southern District, Division Four.

April 2, 1980.

John Z. Williams, Williams & Smallwood, Rolla, for defendant-appellant-respondent.

W. H. Thomas, Jr., Routh, Thomas, Birdsong & Hutton, Rolla, for plaintiffs-respondents-appellants.

FLANIGAN, Chief Judge.

A vehicle driven by plaintiff Desiree Sewell, 19, collided with a vehicle driven by Joe Hale, an uninsured motorist. As a result of the collision Desiree sustained serious personal injuries and her parents sustained a derivative loss. Defendant MFA Insurance Company insured the Sewell vehicle. This action was brought by Desiree and her parents under the uninsured motorist's provisions of the MFA policy. The jury awarded the three plaintiffs a total of $20,000. From the judgment entered on the verdict both sides appeal.

Hale himself was not a party to the action but the two verdict-directing instructions offered by the plaintiffs required the jury to find that Hale failed to keep a careful lookout, was thereby negligent, and as a direct result of such negligence the respective plaintiffs were damaged. The

issue of Desiree's contributory negligence was submitted to the jury in defense instructions. The jury resolved that issue in favor of plaintiffs and defendant MFA does not claim that Desiree was guilty of contributory negligence as a matter of law.

■ On its appeal defendant MFA presents three points, the first of which is that the trial court erred in denying defendant's motion for a directed verdict at the close of plaintiffs' evidence, which was the only evidence in the case, for the reason that the evidence was insufficient, in three specified respects, to support the finding of the jury that the collision was caused by the negligence of Hale in failing to keep a careful lookout.

In *Bunch v. McMillian*, 568 S.W.2d 809, 811 (Mo.App.1978) this court set forth the general principles to be followed in determining whether the evidence is sufficient to support a "lookout" submission. Those principles apply here but they need not be restated.

The collision occurred at approximately 10 p. m., May 17, 1974, at the intersection of Highway 28 and Stringtown Road in Belle, Missouri. Stringtown Road runs generally east and west. As it approaches, intersects, and crosses Stringtown Road, Highway 28 runs generally northeast-southwest. Prior to the collision Hale was driving his 1967 Chevrolet two-door sedan northeastwardly on Highway 28 and Desiree was driving her 1962 Chevrolet four-door sedan westwardly on Stringtown Road.

Highway 28 is 22 feet wide and has two lanes. Stringtown Road is 21 feet wide and has two lanes. A stop sign, located northeast of the intersection, confronted Desiree as she proceeded west toward the intersection. The front of the Sewell car, when it was due south of the stop sign, was 41 feet 6 inches from the east edge of the pavement of Highway 28. Prior to and at the time of the impact the Sewell car was in the righthand, or westbound, lane of Stringtown Road and the Hale car was in the righthand, or northeastbound, lane of Highway 28.

The driver of a vehicle proceeding, as Hale was, northeastwardly on Highway 28 encounters a "dip," the bottom of which is approximately 350 feet from the center of Stringtown Road. Proceeding northeastwardly from the dip, the motorist is on an incline at least until he reaches a point approximately 20 feet from the edge of the intersection, at which point, the evidence may indicate, Highway 28 becomes level.

It is the position of defendant that the evidence adduced by plaintiffs was deficient in the following respects: (a) there was no evidence as to the position of the Sewell car prior to the time the Hale car was "at the crest of the incline," "right at the intersection," or "20 feet from the intersection"; (b) there was no evidence that the Sewell car was visible to Hale when the Hale car "was half way up the incline"; and (c) there was no evidence that, at the time the Sewell car became visible to him, Hale had sufficient time and distance thereafter to take effective action to avoid the collision. Review of defendant's first point is limited to determining the soundness of the three imperfections assigned.

At the time of the accident the weather was "good," the "moon was shining," and the area was well illuminated by street lights. Desiree, who was grievously injured in the accident, had no memory of it. Hale, called as a witness for plaintiffs, remembered very little of the incident. He said that his speed was 25 or 30 miles per hour as he approached the intersection and his headlights were on. He also said that his vehicle was in good operating condition. Hale admitted that he had consumed five or six bottles of beer earlier that day.

Faye White and her husband W. L. White were witnesses to the accident. Faye was driving her automobile, in which her husband was riding, northeastwardly on Highway 28, following the Hale car. The relative movements of the Hale car and the Sewell car are described in the testimony of Faye White and her husband. Although some variances exist in the estimates of speeds and distances contained in the testimony of those two witnesses, MFA does not

contend that the variances are extreme enough to deprive their testimony of probative value.

Deficiency (a), claimed by defendant, is factually unsound. Although the testimony of Faye White was somewhat disjointed, she did say that she saw the Sewell car when she "started up the incline." At that time the Hale car was "half way up the incline" which would place the Hale car 175 feet from the center of Stringtown Road (or, if the "incline" be considered as ending "20 feet from the edge of the intersection," a somewhat greater distance from the center of Stringtown Road). At the same time the Sewell car "was at the stop sign and was moving forward into Highway 28."

Deficiency (b), claimed by defendant, is factually unsound. Faye White saw the Sewell car when Faye "started up the incline." At that time the Sewell car "was at the stop sign and was moving forward into Highway 28." The testimony of Trooper Mattison, the investigating officer, was that the view of a driver, proceeding northeastwardly on highway 28 up the incline, with respect to traffic proceeding west on Stringtown Road approaching the intersection, improves as the motorist ascends the incline. Trooper Mattison's testimony, coupled with that of Faye White, constitutes evidence that the Sewell car was visible to Hale when the Hale car "was half way up the incline" and thereafter.

Deficiency (c), claimed by defendant, is factually unsound. Although neither Faye White nor her husband estimated the speed of the Sewell car in miles per hour, each testified that the Sewell car "was moving slowly" and it remained in motion until the impact. "It was obvious the Sewell car was going to go on Highway 28." When the Hale car, as discussed under deficiency (a), was 175 feet from the approximate point of impact, the Sewell car "was at the stop sign and was moving forward into Highway 28." In view of the respective distances traveled by the two vehicles prior to their collision, the jury could have concluded that the speed of the Sewell car was approximately one-fourth that of the Hale car. The speed of the Hale car was variously estimated to be "15 or 20," and "25 or 30." The testimony of Faye White was that she heard no sound of brakes being applied and she did not recall seeing the brake indicator lights "come on" on the Hale car. Hale made no effort to turn his vehicle into the left hand lane, which was free of oncoming traffic, nor did he turn into the driveway of a filling station which was on his right. Although Faye's speed exceeded that of Hale, she turned her vehicle into the filling station driveway and "gradually" stopped it prior to the collision. Without objection Faye testified that she did not "see anything at all that indicated to her that Hale was trying to avoid this collision." The steering equipment and brakes on the Hale car were in good condition. Trooper Mattison testified that a vehicle going 20 miles per hour, under the conditions which confronted Hale, could be brought to a stop within 50 feet, an estimate which included the driver's reaction time.

Deficiency (c) is to the effect that Hale did not have sufficient time and distance in which to have avoided the accident after "the time the Sewell car became *visible*" to Hale. The Sewell car became visible to him when Hale was at least 175 feet from the point of impact. The evidence is not deficient in any of the respects claimed by defendant.

■ The duty to keep a careful lookout and the concomitant duty to take "effective precautionary action" do not arise at precisely the same moment. *Hawkins v. Whittenberg*, 587 S.W.2d 358, 362[8] (Mo.App. 1979). The duty to act does not necessarily arise at the exact time there is a duty to see. *Thomas v. Wade*, 361 S.W.2d 671, 674 (Mo. banc 1962). In view of the relative movements and speeds of the Hale car and the Sewell car prior to the impact, the jury could properly have found that Hale's duty to take effective precautionary action arose prior to the time the front of his vehicle reached a point at least 50 feet from the path of the Sewell car. The testimony supported a finding that Hale could have stopped his vehicle within 50 feet.

Defendant's first point has no merit.

Defendant's second point is that the trial court erred in admitting evidence, over defendant's objection, that Hale had consumed intoxicants prior to the accident and was, in the opinion of Trooper Corl, intoxicated. This evidence, argues defendant, was inadmissible for the reason "that there was no evidence of erratic driving or other circumstances showing impaired physical condition at the time of the accident."

The petition pleaded, as one of the assignments of negligence, that Hale operated his vehicle while intoxicated in violation of § 564.440 RSMo 1969. Hale testified that on the day of the collision he drank five or six bottles of beer between noon and 3 p. m. When asked if he was injured in the accident Hale testified that he sustained a concussion. Witness Thomas, who lived nearby, went to the scene immediately after hearing the crash. Thomas testified that Hale did not appear to be injured. The collision was investigated by Trooper Mattison but Hale left the scene before Mattison arrived. Trooper Corl saw Hale at a Jefferson City hospital approximately an hour and a half after the collision. Corl said that Hale did not appear to be injured. Approximately three hours after the collision Corl, with Hale's consent, administered a breathalyzer test at the Cole County jail. Hale testified that he drank no intoxicants during the three-hour interval between the accident and the test. Corl testified that Hale was unsteady on his feet, his eyes were bloodshot, his speech was slightly slurred, and he smelled strongly of alcohol. The test showed .13 of 1 percent by weight of alcohol in Hale's blood. In Corl's opinion Hale was intoxicated.

"It has generally been held that in an action to recover damages for injuries sustained in a motor vehicle accident, evidence of intoxication of a party thereto is admissible as a circumstance to be considered along with the other facts in evidence in determining the question of negligence. . ." 8 Am.Jur.2d Auto. and High. Traf. § 938, p. 485. See also 61 C.J.S. Motor Vehicles § 516(4), p. 482.

Defendant cites *Doisy v. Edwards*, 398 S.W.2d 846 (Mo.1966); *Bowman v. Heffron*, 318 S.W.2d 269 (Mo.1958); *Bohn v. James*, 573 S.W.2d 448 (Mo.App.1978); and *Cheatham v. Chartrau*, 237 Mo.App. 793, 176 S.W.2d 865 (1944). Other Missouri cases discussing the admissibility of evidence that a motorist had been drinking or was intoxicated include *Diener v. Mid-American Coaches, Inc.*, 378 S.W.2d 509 (Mo.1964); *Boehm v. St. Louis Public Service Company*, 368 S.W.2d 361 (Mo.1963); and *Hager v. McGlynn*, 518 S.W.2d 173 (Mo.App.1974).

In all of the foregoing cases the ruling of the trial court on the admissibility of the evidence was affirmed on appeal. In all of them except *Doisy*, the evidence was held to be admissible. In *Doisy* the trial court excluded evidence of drinking and the supreme court found no error in the ruling. The cases will be discussed in their chronological order.

In *Cheatham* the evidence was that the defendant had the odor of liquor on his breath, not that he was drunk. The court said that evidence that defendant had been drinking intoxicants *or* was under the influence of intoxicants at the time of the collision was admissible in light of other testimony. Referring to the evidence that the defendant had liquor on his breath the court said, at p. 868, "This is a circumstance tending to prove that defendant had been drinking and when coupled with the fact that the truck, as it approached the point of collision, was zig-zagging and wobbling, and the further fact that defendant had his head drooped down over the steering wheel, it becomes competent and material evidence, and the court did not err in admitting it." *Cheatham* permitted the introduction of evidence of mere drinking, as distinguished from intoxication, at least if coupled with evidence of erratic driving.

In *Bowman* the counterclaiming defendant pleaded, as an assignment of negligence, that plaintiff operated his vehicle in an intoxicated condition, contrary to § 564.-440 RSMo 1949, essentially the same as present § 577.010 V.A.M.S. The court did not deal specifically with the question of

the admissibility of evidence pertaining to drinking or intoxication but did hold, at pp. 273–274, that "[D]efendant was entitled to the benefit of the statute and he could properly base his counter-claim against the plaintiff on common law negligence arising from violation of the mentioned statute." The court held, however, that defendant's verdict-directing instruction based upon the statutory violation was improper because it did not submit facts showing how plaintiff's condition of intoxication was a proximate cause of the collision.

Under *Bowman* it was proper for the petition, in pleading negligence on the part of Hale, to plead the statutory violation. It is true that plaintiff did not offer an instruction submitting that assignment of negligence. It is also true that defendant did not offer a withdrawal instruction telling the jury to disregard the evidence pertaining to Hale's intoxication. See MAI 34.01.

In *Boehm* the minor plaintiff was a passenger on a motor scooter driven by defendant Nelson. The scooter collided with a bus. Plaintiff obtained a verdict against Nelson and the bus company. On appeal Nelson assigned error in the admission of a hospital record showing that Nelson had alcohol on his breath. The pleadings raised no issue of Nelson's intoxication and there was no direct testimony that he had been drinking or that he was drunk. There was evidence that Nelson "drove his motor scooter through the stop sign without stopping at 20 m. p. h., with no headlights burning."

Although the issue of Nelson's intoxication had not been pleaded, evidence that he was not in full possession of his faculties or that his faculties were impaired by the use of alcohol was admissible under the general issue. The court said that evidence that Nelson had been drinking intoxicants was a factor the jury could consider on the issue of negligence and on the issue of whether Nelson was capable of exercising, and did exercise, the highest degree of care in the operation of the scooter. Citing *Cheatham*, the court said that evidence of alcohol on

Nelson's breath became relevant and material when coupled with evidence of his erratic driving.

In *Diener* the plaintiff was a passenger on a bus and the bus company was the sole defendant. Plaintiff was injured when the bus ran off an embankment and brought the action on the theory of res ipsa loquitur. The bus company defended on the ground that the bus driver lost control of the bus because of a collision between the bus and a car driven by McNamee. On appeal by plaintiff from a judgment for the bus company plaintiff claimed that the trial court erred in admitting evidence that McNamee was intoxicated. The court held that although the pleadings did not raise the issue of McNamee's intoxication, "evidence of the fact that McNamee's faculties were impaired by use of alcohol was admissible under the general issue." Citing *Boehm*, the court said that the challenged evidence bore directly upon the issue of whether the bus driver was negligent in causing the collision or whether the collision was caused by McNamee's negligence. The court rejected plaintiff's argument that proof of McNamee's intoxication was not necessary because there was sufficient other evidence to show that the collision was caused by McNamee's negligence. Evidence of McNamee's intoxication was held to be admissible at the time it was offered, which was *before* there was any evidence showing erratic driving on the part of McNamee.

In *Doisy* a car driven by plaintiff collided with an oncoming car driven by defendant. Plaintiff's version of the accident was that when the vehicles were 100 (possiby 300) feet apart, defendant's car started across the center line. Plaintiff pulled to the right and the collision occurred when plaintiff's car was on the right shoulder. Defendant's version was that plaintiff's car was initially in defendant's lane and that defendant lost control of his vehicle in attempting to avoid plaintiff's car. Plaintiff appealed from an adverse judgment and contended that the trial court erred in excluding testimony that the highway patrolman smelled liquor on defendant's breath.

At p. 849 the court said:

"It was not known whether defendant's faculties were impaired or not, and the only thing he [the patrolman] noted on the report of accident was that defendant had been drinking. There was no evidence that defendant's drinking had anything to do with the collision. There was no evidence showing erratic driving by defendant *or any other circumstance from which it might be inferred that defendant had an impaired physical condition at the time of the collision.*" (Emphasis added.)

Although the court said there was no evidence of erratic driving, which seems debatable, under *Doisy* even evidence of mere drinking, as distinguished from intoxication, is admissible if accompanied by evidence of erratic driving or "any other circumstance" indicating that a driver's physical condition was impaired.

In the case at bar, in addition to evidence of drinking, there was evidence that Hale was intoxicated. Although Hale testified that he sustained a concussion, the jury did not have to believe that testimony. There was evidence from witness Thomas and Trooper Corl to the effect that Hale was not injured. Hale had no recollection of the events leading up to the collision. Even under a strict construction of *Doisy*, that fact, otherwise unexplained, satisfies *Doisy's* requirement of "any other circumstance."

In *Hager* the court admitted evidence that the defendant, prior to the accident, had consumed three highballs and "one liqueur." The accident occurred at 2 a. m., when defendant "ran" a red light at a city intersection and struck plaintiff's car. The court said, "The evidence of erratic driving in this case made the evidence of drinking on the part of defendant admissible."

In *Bohn* a vehicle driven by defendant struck plaintiff's automobile in the rear as both vehicles were proceeding north in a multi-lane highway. It was a daylight accident and there was evidence that defendant was exceeding the speed limit. The court held that there was evidence of "erratic driving" on the part of defendant and that the trial court properly admitted testimony that plaintiff and the police officer detected alcohol on defendant's breath.

Hale's violation of § 564.440 was pleaded as a ground of negligence. Hale's driving, if not erratic, was at least negligent. There was evidence that Hale was intoxicated, not merely that he had been drinking. Hale had no recollection of the significant events, although he was injured only slightly, if at all. When the evidence was offered, Hale's intoxication was a live issue under the pleadings. Defendant offered no withdrawal instruction. In light of the foregoing factors this court holds that the trial court did not err in receiving the challenged evidence. Defendant's second point has no merit.

■ Defendant's third point is that instruction 2 and instruction 7, given at the request of plaintiff, were erroneous. "If a point relates to the giving . . . of an instruction such instruction shall be set forth in full in the argument portion of the brief." Rule 84.04(e) V.A.M.R. Neither of the challenged instructions is set forth in the argument portion or any other portion of defendant's brief. The point has not been preserved for review. *Matter of Estate of Anderson,* 544 S.W.2d 35, 39[1] (Mo. App.1976). A gratuitous examination of the challenged instructions discloses no prejudicial error. *International Harvester Credit v. Formento,* 593 S.W.2d 576, 580[10] (Mo.App.1979).

■ On their appeal plaintiffs' single point reads:

"The law in Missouri should permit recovery of pre-judgment interest from either the date the cause of action arose or the date upon which demand was made for payment by the insurance company under its uninsured motorist coverage."

Plaintiffs' point does not comply with that portion of Rule 84.04(d) V.A.M.R. which requires a point to "state briefly and

concisely what actions or rulings of the court are sought to be reviewed and wherein and why they are claimed to be erroneous." Rule 84.04(d) also states, "Setting out only abstract statements of law without showing how they are related to any action or ruling of the court is not a compliance with this Rule." Plaintiffs' point purports to set forth what the law should be, rather than what it is, and thus it does not rise even to the level of an abstract statement of law. The point has not been preserved for review. *Cato v. Modglin*, 545 S.W.2d 307, 309[2] (Mo.App.1976).

The judgment is affirmed.

GREENE and PREWITT, JJ., concur.

MAUS, J., disqualified.