Don J. ELLIOTT and Charlotte O. Elliott, Appellants,

v.

MID–CENTURY INSURANCE COMPANY, Respondent.

No. WD36412.

Missouri Court of Appeals, Western District.

Sept. 24, 1985.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied Dec. 3, 1985.

Jimmie D. James, William C. Lane, Independence, for appellants.

Claire C. McCaskill, Theresa Shean Hall, Kansas City, Knipmeyer, McCann, Fish & Smith, for respondent.

Before DIXON, SOMERVILLE and NUGENT, JJ.

DIXON, Judge.

The Elliotts appeal from the jury verdict for Mid-Century in a suit for payment on a fire insurance policy. They assert error arises from (1) Mid-Century's use of allegedly unconstitutionally seized evidence at trial; (2) Mid-Century's review of the criminal file of Don Elliott's arson trial; (3) the trial court denial of evidence of Don's acquittal; (4) the use of the transcript of the testimony of Kathleen Higgins from the prior criminal trial; (5) Mid-Century's final argument. All of the error is claimed to be cumulative, but only the acquittal issue and the prior testimony issue are preserved error. The other claims rest upon an assertion of plain error.

On January 8, 1982, the Elliotts' house, on which they had paid $50,000 down and on which a balloon note for $100,000 was imminently due, burned. The evidence established that the Elliotts were in financial difficulty, with apparently insufficient funds to meet even fixed monthly expenses. Their loan applications to various financial institutions to refinance the house loan had been rejected, one as recently as a week before the fire. The Elliotts' house had been listed for sale but had not been sold, and the Elliotts had entered into a contract, contingent on the sale of their house, to buy another, less expensive house.

On January 8, at approximately 11:30 a.m., the Elliotts left the house to visit Don's father in Humansville. They ascertained the windows and doors were locked, put some of their valuables in a freezer, left their dog outside, and then left. Prior to leaving, Don returned alone to the house for his son's blanket and teddy bear. Although all other witnesses later testified the burglar-fire alarm system had been unplugged, Don testified it was plugged in and working when he left. The Elliotts went to Humansville where, at approximately 5:30 p.m., they learned of the fire. The Elliotts returned to their house, leaving the children behind.

The fire was first reported at approximately 1 p.m. and, on arrival, the firefighters had to break into the house to fight the blaze. The evidence revealed the burglar-fire alarm system had been unplugged and various gas cans and a pan of oil were in the garage. Those who investigated the scene and the evidence taken from the scene posited that, because of the burn pattern and the traces of diesel oil found in the electric furnace filter, the fire was of a suspicious nature, and concluded it had begun by diesel fuel having been poured into the duct work and then ignited. In closing argument, the Elliotts' attorney admitted the fire was of an incendiary nature, but stated no evidence linked the Elliotts to the fire.

The Elliotts filed suit on the insurance policy they had purchased from Mid-Century on the house. In Mid-Century's answer, it stated the Elliotts had breached the terms and conditions of the policy as they had concealed, misrepresented, and falsely sworn about the cause, nature, amount, and extent of the loss. The jury found for Mid-Century and the Elliotts appeal.

The Elliotts first allege plain error occurred because of Mid-Century's unobjected-to use of allegedly unconstitutionally-seized evidence at trial. After the fire, governmental authorities investigated the fire scene and seized the furnace filter and duct work without a warrant and allegedly without the Elliotts' consent. Elliotts argue this rendered both search and seizure unconstitutional. Don Elliott was tried for arson and jury convicted but, post-trial, the court decided the evidence had been illegally seized and acquitted Don.

First, the point itself violates Missouri Supreme Court Rule 84.04(d) as it does not set forth for review any action or ruling by the trial court, nor does it state why the trial court's action is erroneous. This failure is repeated in the argument portion of the brief. Compliance with Rule 84.04 is mandatory, *Moseley & Co. v. Building Leasing Corp.*, 581 S.W.2d 399, 401 (Mo.App.1979), and the failure to set forth the trial court's action or ruling alleged to be erroneous preserves nothing for review. *Kolocotronis v. Ritterbusch,*

667 S.W.2d 430, 434 (Mo.App.1984). Second, no objection was made at trial and the point was first raised in the suggestions in support of the new trial motion which were filed more than two months post-judgment. Thus, again, nothing is preserved for review, *Kline v. Bourbon Woods, Inc.*, 684 S.W.2d 938, 941 (Mo.App.1985). Further, as a constitutional issue, it must be raised at the first opportunity to be preserved. *Horne v. King*, 678 S.W.2d 465, 467 (Mo. App.1984). Nonetheless, the Elliotts present the point for plain error review under Rule 84.13.

▮ The Supreme Court, in *United States v. Calandra*, 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974), stated the primary purpose of the exclusionary rule "is not to redress the injury to the privacy of the search victim ... [but] to deter future unlawful police conduct and thereby effectuate the guarantee of the Fourth Amendment against unreasonable searches and seizures." *Id.* at 347, 94 S.Ct. at 619. Further, "[d]espite its broad deterrent purpose, the exclusionary rule has never been interpreted to proscribe the use of illegally seized evidence in all proceedings or against all persons.... [S]tanding to invoke the exclusionary rule has been confined to situations where the Government seeks to use such evidence to incriminate the victim of the unlawful search." *Id.* at 348, 94 S.Ct. at 620. *Accord, United States v. Janis*, 428 U.S. 433, 96 S.Ct. 3021, 49 L.Ed.2d 1046, *on remand*, 540 F.2d 1022 (9th Cir.), *reh. denied*, 429 U.S. 874, 97 S.Ct. 196, 50 L.Ed.2d 158 (1976). In *Honeycutt v. Aetna Insurance Co.*, 510 F.2d 340 (7th Cir.), *cert. denied*, 421 U.S. 1011, 95 S.Ct. 2416, 44 L.Ed.2d 679 (1975), a case factually similar to the instant case, the court relied on the *Calandra* rationale in ruling that allegedly unconstitutionally seized evidence was admissible in a civil action. Because the exclusionary rule was intended to deter governmental and not private action, under the circumstances it cannot be said the evidence was improperly admitted.

The Elliotts' citations to *Diener v. Mid-American Coaches, Inc.*, 378 S.W.2d 509 (Mo.1964), and *Plater v. W.C. Mullins Const. Co.*, 223 Mo.App. 650, 17 S.W.2d 658 (1929), which they allege hold that evidence unconstitutionally seized is never admissible, do not control the point. First, as in the instant case, in *Diener*, the constitutional issue was not preserved for review. Second, the "rule" upon which the Elliotts rely was deemed inapplicable in both cases. Third, the later decisions of the Supreme Court in *Calandra* and *Janis*, state the applicable ramifications of the exclusionary rule and the clear implication of those decisions is that the exclusionary rule is inapplicable in situations such as these.

▮ The Elliotts next assert the trial court erred in ruling that Mid-Century could review the criminal file in Don Elliott's arson case because the records were "closed" under §§ 610.105 and 610.120, RSMo Supp.1984. Once again, the issue has not been preserved for review. During pre-trial proceedings, the Elliotts' attorney objected to the release of the file to Mid-Century. Elliotts argue that if the statutes had been intended to allow attorneys to see the closed records, they would have so stated. At trial, no objections were made to the introduction of evidence from the criminal file. In their suggestions in support of the new trial motion and in the brief, the Elliotts assert the file could only be used in a criminal and not a civil case. Thus, not only was the assertion untimely made, thus preserving nothing for review, *Kline*, 684 S.W.2d at 941, but it is not properly before this court, as the scope of objections made at trial may not be broadened on appeal. *Walker v. Woolbright Motors, Inc.*, 591 S.W.2d 289, 291 (Mo.App.1979). Further, the Elliotts have made no showing of prejudice allegedly arising from allowing the Mid-Century attorneys to look at the criminal file in this related civil litigation. *Pratt v. Cudworth*, 637 S.W.2d 720, 724 (Mo.App. 1982).

▮ The Elliotts further assert the court erred in not allowing them to introduce evidence of Don's acquittal on the arson

charge after Mid-Century allegedly alluded to the criminal trial. The Elliotts assert the doctrine of curative admissibility applies. Initially, it must be noted that evidence of an acquittal in a criminal prosecution is inadmissible in a civil action because of the inherent differences in the actions. *Sklebar v. Downey*, 220 Mo.App. 5, 285 S.W. 148 (1926); *Myers v. Maryland Casualty Co.*, 123 Mo.App. 682, 101 S.W. 124 (1907). Further, although to this time no Missouri court has addressed the question, courts in other jurisdictions have explicitly held that evidence of the insured's acquittal of arson is inadmissible in his civil suit to recover under the policy. *McSweeney v. Utica Fire Ins. Co.*, 224 F.2d 327 (4th Cir.1955); *Greenberg v. Aetna Ins. Co.*, 427 Pa. 511, 235 A.2d 576 (1967); *Tennessee Odin Ins. Co. v. Dickey*, 190 Tenn. 96, 228 S.W.2d 73 (1950).

■ The curative admissibility doctrine "permits a party to reply to inadmissible evidence introduced by the opposing party with similar evidence if the introduction of such evidence is necessary to remove an unfair prejudice brought about by the admission of the earlier inadmissible evidence." *Gevermuehle v. Geimer*, 619 S.W.2d 320, 322 (Mo.App.1981). Further, "[t]he admission of such curative evidence ordinarily rests in the sound discretion of the trial court." *Id.; Frye v. Meramec Marina, Inc.*, 673 S.W.2d 451 (Mo.App. 1984). Here, the trial court did not abuse its discretion in not allowing the Elliotts to present evidence of Don's acquittal on the arson charge. Prior to trial, the court granted Mid-Century's motion *in limine* and instructed that the parties not mention, directly or indirectly, Don Elliott's acquittal in the arson case. At trial, counsel for Mid-Century, during cross-examination thrice (T. 204, 215, 398) referred to a "State's Exhibit." The second time, counsel corrected herself and the third, upon objection by the Elliotts' counsel, the court admonished Mid-Century's counsel but stated he did not believe the jury had even noted the reference. Later, while reading the transcript testimony of a witness from the criminal trial, although counsel had told

the court she would not refer to the "court" or the "jury," she stated the words four times. On none of these seven occasions did Mid-Century's counsel mention, directly or indirectly, that there had been a prior criminal trial. Viewed in this light, it cannot be said that the court abused its discretion in not admitting evidence of Don Elliott's acquittal. Further, it is doubtful that the doctrine of curative admissibility is even tangentially involved, since the Elliotts' counsel objected to Mid-Century's choice of words. *See Gevermuehle*, 619 S.W.2d at 322.

■ The Elliotts next assert the trial court erred in letting Mid-Century read the testimony of Kathleen Higgins, an expert witness for Mid-Century, from the criminal trial transcript. The issue is the propriety of the trial court's ruling as to the availability of the witness. That ruling is within the discretion of the trial court. *Orr v. State Farm Mutual Automobile Insurance Co.*, 494 S.W.2d 295, 299 (Mo. banc 1973).

■ The witness, who lived in Boston, was under subpoena and present the third day of trial. It developed at about 4:15 p.m. that she was also under subpoena in a criminal trial in Boston for the next day. It was necessary for her to leave to catch a plane. The defense asked to put the witness on out of order, and the plaintiffs objected that the physical evidence she was going to testify about was not properly identified and might have been contaminated before the witness had examined the items. Defendants then offered to connect up her testimony if she was testifying out of order and the plaintiffs objected. The defense also offered to use the transcript of the prior trial. There was then an inconclusive discussion as to the admissibility of the evidence at the prior trial. The court recessed for a few minutes and then the court announced that her testimony from the prior trial would be admissible. After the trial recessed for the day, the court announced the basis for his ruling that the prior testimony would be admitted. The

plaintiffs then, for the first time, raised the issue of availability of the witness who, by then, was on her way back to Boston. Plaintiffs asserted that she could have been put on out of order, a procedure they had resisted less than an hour before. The defendant's evidence had only commenced that afternoon and the foundation witnesses for the physical evidence had been called first. Under these facts, the trial court did not abuse its discretion in ruling that the witness was unavailable.

The Elliotts further assert plain error resulted from MidCentury's final argument in which Don Elliott was characterized as a phoney and a fraud. Once again, the point must be summarily denied for the absolute failure to comply with Rule 84.04. The Elliotts point to no ruling or action by the trial court which is deemed to be erroneous and they cite no authority upon which to premise their argument. *Kolocotronis*, 667 S.W.2d at 434; *Moore v. Smith*, 657 S.W.2d 664, 667 (Mo.App.1983). Further, no objections were made at trial and the point was first raised in the suggestions in support of the new trial motion.

The Elliotts finally assert the trial court erred in not granting a new trial, based on cumulative prejudicial error. As none of the points constitute error, the alleged errors cannot rise to the level of cumulative prejudicial error. *Vaeth v. Gegg*, 486 S.W.2d 625, 631 (Mo.1972). Affirmed.

All concur.